THE ENCHANTRESS.

HARD et al. v. THE ENCHANTRESS.

(Circuit Court of Appeals, Second Circuit. September 12, 1894.)

SHIPPING—SHORT DELIVERY OF CARGO—SALE OF UNCLAIMED CARGO — APPLICATION OF PROCEEDS.

Where a consignee, having a claim against a chartered ship for short delivery of coffee, knowingly purchases of the charterers unclaimed coffee

brought by the ship on the same voyage, he is equitably bound to apply the purchase price to the payment of such shortage claim, so as to relieve the ship from liability in rem, rather than apply it to other claims against the charterer for previous shortages in cargo brought by other vessels, and still hold the ship liable for its own shortage. 58 Fed. 910, affirmed.

This was a libel by Anson W. Hard and George C. Rand against the steamer Enchantress to recover for short delivery of coffee. The district court dismissed the libel (58 Fed. 910), and libelants appealed.

Willard Parker Butler, for libelants.

J. Parker Kirlin, for claimant.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The libelants, composing the firm of Hard & Rand, as indorsees of certain bills of lading, filed in the district court for the southern district of New York their libel in rem, to recover from the steamer Enchantress the value of 35 bags of coffee shipped on board said steamer at Victoria, Brazil, on or about September 29, 1892, and not delivered to the libelants upon the arrival of the vessel in New York, on November 4, 1892. At the time of the shipment, the Enchantress had been chartered to the United States & Brazil Mail Steamship Company by a demise charter, and was regularly running in its line of steamers between New York and Brazil. The district court dismissed the libel. We think that the decree of the court was correct, although we do not adopt all its suggestions of fact. The claimant stipulated that the firm of Hard, Rand & Co. shipped at the time and place just named the number of 5,947 bags of coffee mentioned in the bills of lading annexed to the stipulation, and which were thereupon delivered by said shippers to said steamship company. The bills of lading specified certain marks as appertaining to the bags of this shipment. Upon arrival in New York, the vessel contained one more bag than was called for by her manifest, but fifty-seven bags did not have the marks stated therein. Thirty-five bags containing the marks on the bills of lading and manifest were not found or delivered to the libelants, and it is contended that the stipulation was limited to the number of bags, and that there is no adequate evidence that the number which was shipped on board the vessel at Victoria contained the specified marks. The manifest, which was signed by the claimant, specifies the marks belonging to the libelants' 5,947 bags, and the whole conduct of the charterers at the time when the coffee should have been delivered, and when demand of payment was being pressed upon it, shows that the question of the shipment of these marked bags was not in dispute. After the extent of the nondelivery had been ascertained, and after the libelants had presented their claim for the loss to the steamship company, the latter tendered to the libelants the unmarked 57 bags, which they refused to receive, because the bags did not have their marks, and presumably did not contain their coffee. A similar tender was made to other consignees who had claims for "shortage"

by the Enchantress, and was refused. Thereupon the steamship company sent the 57 bags and 7 other bags, with their contents, to a coffee-cleaning establishment, to be cleaned; and on December 14, 1892, sold the 64 bags to the libelants, at 15 cents per pound, which amounted to about $1,200. They must have known that a large portion of this coffee was the same which had been previously tendered to them in the bags which came by the Enchantress. Not to infer that they knew this is to attribute to them a lack of intellect. In fact, the salesman told them that they were buying their own coffee. The libelants' bill for the 35 missing bags was $793.17. The steamship company was at the time in a very weak financial condition, and the object of the sale was to obtain cash with which to pay the various claims against the company for nondelivery. When, in a day or two thereafter, the steamship company presented its bill against the libelants, they refused to pay. At this time they had other claims against the company, which had previously arisen, principally for slack bags of coffee, amounting to $2,358.25. On December 16, 1892, the libelants sent the following letter to the steamship company:

"Dear Sirs: Returning herewith our claim against the S. S. Enchantress for 35 bags of coffee short, we have to say your proposal of adjustment of this loss, at the cost of the merchandise, does not appear to us as an equitable one; for, if we are entitled to any recovery whatever, it should be for the whole of the loss sustained by us, which is the market value at port of destination. Please favor us with your check for amount of this and other claims, as per inclosed memorandum, the payment of which you have promised from time to time."

The letter also inclosed a memorandum of the other and earlier claims against the company, which they state is a memorandum "of our unpaid claims against you." The steamship company replied, denying that the value of coffee not delivered by the Enchantress should be computed according to the value at the port of destination, and returned the bill for correction. Further correspondence ensued, and on February 13, 1893, the steamship company wrote to the libelants reiterating its objections to their estimate of the amount of all their various claims. After this time, the steamship company apparently became entirely unable to pay its debts; and in April, 1893, the libel was filed against the vessel, upon the ground that the amount which the libelants owed for the 64 bags of coffee was to be or had been applied upon their earlier and more unsecured claims against the company. The owners of the vessel insist that this amount was intended by the libelants, at or about the time of the purchase, to be applied upon the bill for the 35 bags. No such intention was manifested at the time of the purchase; there is no evidence which satisfies us that they subsequently entertained such an intention; and it seems to be negatived by the correspondence. They asked for a check in payment of the Enchantress' claim and of their other claims; and the fact that in the inclosed memorandum of their other claims they speak of them as unpaid does not, in view of their affirmative declaration that the Enchantress claim was not paid, make it probable that they meant to admit by the memorandum that it had been paid.

But, whatever was the intention of the respective parties to the purchase and sale of the 64 bags of coffee as to the application of the amount of money due upon the purchase, we agree with the district court that the facts do not bring the case within the doctrine of the application of payments. The price of the coffee was a debt due from the libelants to the steamship company, and against its payment they had a counterclaim for damages for breach of contract, to a larger amount. The "account," if it can be so called, between the parties, was not a running account, like that of a tradesman with his customer, where goods are furnished by each to the other. The question whether the libelants can recover against the vessel the amount of loss upon the 35 bags of coffee, when they purchased from the owner pro hac vice (who was liable to them for those bags) a larger amount of coffee, which, within their knowledge, came by the same vessel, and which debt has never been paid in money, is a question to be settled upon the equitable principles, or according to the rules of justice by which courts of admiralty aim to be controlled. When the loss was discovered, the libelants had a claim for reimbursement against the steamship company and against the vessel. The vessel had an equitable right to insist that the cargo which it safely brought should be so applied as to relieve it, if practicable, from the loss upon the cargo which it failed to bring; and the libelants, with knowledge that they were receiving and not paying for coffee brought by the vessel, were also under an equitable obligation to give the vessel the benefit of that portion which it brought, which they received, and the purchase price of which is unpaid. We agree with the district court that this equitable right of the ship was superior to any right of the libelants to have the proceeds of this cargo applied upon prior claims against other vessels, to the exclusion of the Enchantress. The decree of the district court is affirmed, with costs.