## HERSCHEL JONES MARKETING SERVICE, Inc., v. UNITED STATES.

### THE ARGOSY.

District Court, S. D. New York. February 20, 1929.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Earl Appleman, of New York City, of counsel), for libelant.

Charles H. Tuttle, U. S. Atty., of New York City (Horace M. Gray and Edwin H. Mead, Sp. Asst. to U. S. Atty., both of New York City, of counsel), for the United States.

HAZEL, District Judge. It is proven herein that 180 barrels of apples were transported from Martinsburg, W. Va., to New York in railroad car P. F. E. No. 16081, and it appears by the letter in evidence, written by J. G. Maples, that the barrels were marked "H. P. Thorn, Martinsburg, W. Va."; that, on arrival of the shipment at New York, it was transferred to the respondent steamship Argosy, where the barrels were counted and checked and their destination to Allborg, via Copenhagen, noted, followed by delivery to the shipper's agent of a dock receipt which bore the mark "S. & K.," while the bill of lading had no indicia mark, but contained a reference to car P. F. E. 16081, without further marks of identification of cargo. The bill of lading in this form was signed by respondent's clerk, but he declined to accept responsibility for adding an identification mark. There was no delivery to the consignee of 180 barrels of apples, marked either "Thorn" or "S. & K." Although the barrels are claimed to have been marked "Thorn" by the shipper at Martinsburg, and the marking "S. & K." was the trade marking of another shipper, no barrels shipped in car P. F. E. 16081 were delivered to the consignee. Respondent claims, among other things, that, because libelant's agent refused to consent to marking "S. & K.," it was tacitly understood that the apples should go forward unmarked, and failure to deliver was excused because the consignee demanded barrels marked "Thorn," and no barrels having such marks were received for shipment.

It was the duty of the vessel, under section 4 of the Harter Act (46 USCA § 193), to issue to the shipper a bill of lading or shipping document, stating, among other things, the marks for identification, number of packages, or quantity. The vessel was not exonerated from liability because of the reluctance or refusal of libelant's agent to assent to the marking "S. & K." in the dock receipt. At such time the cargo had been stowed in the ship, and the shipper's agent

could not then change the identification mark. It was negligence on the part of the steamship to omit the correct identifying marks and add "S. & K." on the dock receipt. It is evident that in some unexplained way libelant's barrels were mismarked. Under the doctrine of the Cardiganshire (D. C.) 9 F. (2d) 416, the duty devolved upon the steamship to separate the barrels from other barrels of apples of a like kind, so as to enable proper delivery to the consignee at the destination. See, also, The Nora (D. C.) 14 F. 429; The Huntress, 12 Fed. Cas. No. 6914, wherein it was held that the fault of the shipper or owner, in failing to plainly mark or tag the merchandise, does not excuse the ship from responsibility in that relation, unless the shipper is found to be alone to blame.

The evidence does not disclose fault on the part of the shipper for failure to mark. Although the ship carried a large cargo of apples, shipped by different dealers to different consignees, resulting, no doubt, in some confusion as to identification, its failure to take steps before stowing the apples, or afterwards before arrival, for identification and separation from others to attain proper delivery, even though the original identifying marks had been obliterated, was, I think, an act of carelessness for which it must be condemned. That the ship's agent at Copenhagen could not identify the cargo for delivery is no excuse, for, if the Harter Act had been complied with, there would have been no difficulty in this relation.

Respondent's contention that the apples in question were not in fact delivered to the Argosy, but were delivered to the Minnequa, as testified by Rovendro, is in all probability a mistake. The checking by car numbers and marking "S. & K." on the dock receipt, including the bill of lading, negatives this contention. No only libelant's witness Schumacher, but also Anderson, respondent's bill of lading clerk, agree that the apples were checked by their car numbers. The witness Cherny, who had charge of the railroad records, also testified that the apples in car P. F. E. 16081 were delivered to the Argosy, although neither he nor Rovendro are able to recall any identification marks or labels. The Enchantress (C. C. A.) 63 F. 272, cited by respondent on the point that the carrier is relieved from liability, where a consignee declines to accept a shipment because unmarked or insufficiently identified, does not apply to the present situation. In that case the cargo was delivered, while here it was evidenced that the cargo was discharged at the destination.

Nor do I find evidence to sustain respondent's contention that the shipper's broker insisted on a bill of lading without marks on the barrels. The testimony of Anderson is not fairly open to this inference. It also appears that the consignee was willing to accept apples of other marks than "Thorn," but the offer to deliver by respondent was withdrawn, and inferior apples were then offered, which were declined.

A decree may be entered, with costs, in favor of libelant, and a commissioner appointed to take proof and report as to damages.