TELLEZ, INDIVIDUALLY AND TRADING AS ALFREDO TELLEZ AND COMPANY, TO USE OF INSURANCE COMPANY OF NORTH AMERICA *v.* CANTON RAILROAD COMPANY ET AL.

[No. 83, October Term, 1956.]

*Decided March 6, 1957.*

The cause was argued before COLLINS, HENDERSON and PRESCOTT, JJ., and NILES, J., Chief Judge of the Supreme Bench of Baltimore City, specially assigned.

*Benjamin Lipsitz,* for appellant.

*David C. Green,* with whom were *John Henry Lewin* and *Venable, Baetjer & Howard* on the brief, for appellee, Canton Railroad Company.

*Harrison L. Winter,* for appellee, The Rukert Terminals Corporation.

*Clayton W. Daneker* with whom were *Constable, Alexander & Daneker* on the brief, for appellee, Robert C. Herd & Company, Incorporated.

NILES, J., by special assignment, delivered the opinion of the Court.

The question here presented is whether under the pleadings and affidavits the defendants are entitled to summary judgment on the ground that "there is no genuine dispute as to any material fact." (Summary Judgment Rule 1(a); Maryland Rule 610 a.)

The plaintiff, an importer, claims that 400 bales of broom corn marked "A. T. & Co." and having a value of about

$7,800, which were brought to Baltimore from Italy by sea, were lost or misplaced by the stevedore who unloaded them, by the railroad which received them for carriage to a warehouse, or by the warehouseman which stored them, or by all three. He alleges that the warehouseman delivered to him 400 bales of inferior quality which were either unmarked, or which bore marks other than "A. T. & Co.". He has sued the stevedore, Robert C. Herd & Co., Inc.; the receiving railroad, Canton Railroad Company; and the warehouseman, The Rukert Terminals Corporation, which will be referred to as "Herd", "Canton", and "Rukert", respectively.

The defendants contend that no bales marked "A. T. & Co." were on the ship, discharged from the ship, or received by any of them. They allege that they delivered to the plaintiff exactly what they received, namely, 400 bales, either unmarked or bearing other marks; that their affidavits prove this fact; that there are no counter-affidavits to disprove it; that there is no dispute as to any material fact; and that they are entitled to summary judgment.

The problem is not whether the evidence contained in the affidavits of the defendants is weightier than that of the plaintiff. It is whether, considering the papers in the case, there is any genuine dispute as to a material fact which should be submitted to a trier of fact.

Judge Byrnes, in a memorandum opinion, held that the affidavits of the defendants conclusively showed that none of the broom corn involved was marked "A. T. & Co."; that no attempt was made by the plaintiff to offer affidavits from the shipper of the broom corn in Italy, or from the ocean carrier to support the contention that the bales of broom corn were marked "A. T. & Co."; that there was no dispute of fact; and therefore that defendants were entitled to summary judgment.

The case thus turns on the question of whether there is evidence in the case sufficient to raise a material question of fact that 400 bales marked "A. T. & Co." were received by the defendants or any of them. The only data on which to base a conclusion that the bales were marked "A. T. & Co." consists of the ocean bill of lading, the Canton bill of lading, and perhaps a custom inspector's report. The rule requires a show-

ing of admissible evidence by the affidavits; and the question ultimately, therefore, is whether these documents containing such evidence are admissible against the defendants.

From the pleadings, affidavits, and the statements at the argument by respective counsel, the facts may be stated as follows:

The plaintiff purchased 400 bales of Florentine broom corn from S. Fernandez, of Florence, Italy; these bales were shipped on board the S. S. Knut Bakke at Leghorn on November 16, 1951. A copy of a bill of lading signed by the master describes the bales as being marked "A. T. & Co.". On the same vessel there were shipped 3001 other bales of broom corn purchased by C. H. Demarest & Co. of New York. The shipping documents indicate that these bales were marked "C. H. D." or "H. A.".

The ship arrived in Baltimore, and on December 15, 1951, was discharged at Pier 7, Canton, by the defendant, Herd, as stevedore. It does not clearly appear whether the 400 bales of Tellez were separated from the 3001 bales of Demarest in the stowage of the ship. Herd's men knew that there was a shipment of 400 bales marked "A. T. & Co." expected, and two freight cars, ACL 23201 and IC 39048 had been "spotted", or placed on the pier, for their reception. When Herd's men found no bales marked "A. T. & Co." turned out from the ship, the last 400 bales were placed in those cars. The vessel received a receipt from Canton for 3401 bales, the receipt describing the marks as "Various". Canton thereupon issued a bill of lading to the plaintiff, Tellez & Co. dated December 15, 1951, for the carriage of 400 bales "marked A. T. & Co." to "Rukert Terminals, Canton, Baltimore via Pennsylvania Railroad". This bill of lading, which had been made up by plaintiff's custom house broker before the ship arrived, was signed by Canton.

The Pennsylvania Railroad delivered these cars to Rukert and presented freight bills to Rukert dated December 15, 1951. The freight bills identified the two cars, but bore no notation as to marks upon the goods, which were described simply as "400 bales of Florentine broom corn stalks". Rukert gave no receipt to either Canton or to the Pennsylvania Railroad.

When the cars were unloaded by Rukert its men found no bales marked "A. T. & Co.".

There was no shortage in the number of bales. 3001 were received by Rukert for Demarest; and 400 were received by Rukert for Tellez. But according to the affidavits filed by all or various parties, no bale was found with the mark "A. T. & Co." nor was any bale marked "A. T. & Co." received by any person to whom any of the 3401 bales were sold by Tellez or by Demarest.

The plaintiff now sues Herd, Canton and Rukert, charging that they, or one of them, misplaced, confused or lost the 400 bales marked "A. T. & Co." and claims their value as damages. No claim is made against the steamship company or the Pennsylvania Railroad.

To combat the affidavits of the defendants, the plaintiff has filed, among other papers, copies of:

1. The ocean bill of lading made out at Leghorn, describing 400 bales as marked "A. T. & Co.",
2. The receipt given by Canton to Herd, in which the marks are described as "Various",
3. The Canton bill of lading describing the marks on 400 bales received from Tellez as "A. T. & Co.".

The decision in the case thus depends upon whether the papers above mentioned contain admissible evidence to support the allegation that any of the defendants received bales marked "A. T. & Co.".

Summary Judgment Rule 2 (G. R. P. P., Part Two, IV, 2; now Maryland Rule 610b) provides:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * *."

It should be noted with some emphasis that the affidavits as to surrounding facts filed by the plaintiff do not comply with the above Rule. Most of them are not made on personal knowledge of the affiant, and they contain statements of fact thus not admissible in evidence. If the plaintiff's case rested

on them alone, it would be dismissed. See *Frush v. Brooks,* 204 Md. 315; *Nardo v. Favazza,* 206 Md. 122; *Fletcher v. Flournoy,* 198 Md. 53.

Apparently, however, no contention was made before Judge Byrnes that copies of the two bills of lading and of the receipt were not true copies of the original papers issued, and no objection was made to the method of submission. They were considered by Judge Byrnes in deciding the case, and we therefore consider them here on the basis expressed by Judge Markell in *Dowell v. O'Brien,* 199 Md. 299, at 301:

> "Summary judgment is not a formal, technical proceeding. We think the affidavit should not be ignored."

See also *Fletcher v. Flournoy, supra,* p. 62; and the opinion of Judge Warnken in *Hawtof v. Hazel,* Daily Record, February 29, 1956.

The defendants contend that they are entitled to summary judgment unless the plaintiff by his affidavits has demonstrated that every one of his allegations is true. This is an overstatement of the case. Affidavits supporting or opposing summary judgment need not dispose of all issues raised by the pleadings.

In *Molesworth v. Schmidt,* 196 Md. 15, 20, this Court quoted from *United States to use of General Electric Co. v. Schofield Co.,* C. C., 182 F. 240, at page 245, speaking of an answer under oath to a motion for summary judgment, saying:

> "It need not set up a defendant's whole case; it need do no more than show one sufficient reason why summary judgment should not be entered."

The function of the summary judgment procedure is not to try the case or to decide issues of fact. It is merely to determine whether there is an issue of fact to be tried, and if there is none, to cause judgment to be rendered accordingly.

In *Frush v. Brooks, supra,* p. 321, this Court quoted the reporter's notes to the Summary Judgment Rule, with reference to proceedings for summary judgment:

> "The court does not, of course attempt to decide any issue of fact or of credibility, but only whether such issues exist. If the affidavits or other evidence show a genuine conflict, the court must deny the motion. Thus the proposed procedure is not a substitute for a trial, * * *."

If there is any issue of fact undisposed of and remaining to be determined by the trier of the facts upon the weight of the evidence, summary judgment can not be granted.

With respect to Canton, we think that the issuance by it of a bill of lading acknowledging the receipt of 400 bales "marked A. T. & Co." is decisive. It does not matter that the bill of lading may have been made up by the plaintiff's own agent before the ship arrived, for Canton signed it. Such signature constituted an admission that the bales received by it were marked "A. T. & Co." and is primary evidence of that fact. *Lambros v. Coolahan*, 185 Md. 463. See also *Cox v. Sandler's, Inc.*, 209 Md. 193. The admission itself sets up a dispute of fact not only upon a material issue, but upon the vital issue as to Canton.

The truth of this admission can be disputed at the trial, for it is accepted law that a bill of lading may be contradicted or explained, and that the parties to it are not irrevocably bound by the form of receipt. *Knauth on Ocean Bills of Lading* (4th Ed. 1953), at page 183. *The Isla de Panay*, 1923 A. M. C. 24, 896, 292 F. 723; *The Muskegon*, 1924 A. M. C. 1512, 1520, 10 F. 2d 817; *Thomas Roberts & Co. v. Calmar S. S. Corporation*, 1945 A. M. C. 375, 59 F. Supp. 203; *Monnier v. United States*, 1925 A. M. C. 982, 16 F. 2d 812, aff'd without op., 16 F. 2d 815. See also *Pullman Co. v. Ray*, 201 Md. 268, 273.

With respect to Rukert, the evidence consists of (1) the recital in the ocean bill of lading that plaintiff's 400 bales were marked "A. T. & Co."; (2) the recital in the Canton bill of lading that the 400 bales in cars ACL 23201 and IC 39048 were marked "A. T. & Co."; and (3) the affidavit of Norman G. Rukert that Rukert unloaded and received the 400 bales in those cars.

Whether the recitals in the two bills of lading, neither of

which was signed by Rukert, constitute evidence against Rukert is the important question.

The ocean bill of lading was issued by the master of the vessel at Leghorn, naming an Italian company as shipper, and the consignee as "Order: First National Bank of Baltimore. Notify Alfredo Tellez & Co.". None of the defendants is a party to it, and its recitals constitute no admission by any of them. In this respect it differs sharply from the Canton bill of lading.

Nevertheless, the ocean bill of lading was, we think, a document or paper made in the ordinary course of business, admissible in evidence to prove the act or transaction recorded in it, namely the loading of 400 bales marked "A. T. & Co.". (See Code (1951), Art. 35, sec. 68.)

No authority is needed for the proposition that bills of lading are papers made in the regular course of business at the time of loading goods for transportation on either ships or railroad cars.

The important part of these bills of lading is the recital in each that the marks upon the 400 bales are "A. T. & Co. Baltimore". The designation in an ocean bill of lading of the marks upon packages of goods shipped is not only part of the regular course of the business of transportation, and is practically necessary for identification of the goods shipped; it is required by Statute. *Knauth,* op. cit., at page 180, refers to the Carriage of Goods by Sea Act 1936, Sec. 3 (3) (a) under which this shipment was made, and says:

"The bill of lading must show the leading marks."
Mr. Knauth, at page 4 of the same volume, sets out in full the provisions of this Act as to marks, and the provision that the bill of lading "shall be *prima facie* evidence of the receipt by the carrier of the goods as therein described".

The ocean bill of lading in the case at bar contains a space headed: "Marks and Numbers"; in this space appear the words "A. T. & Co. Baltimore".

With respect to the Canton bill of lading, issued for carriage within the State of Maryland, the Uniform Bills of Lading Act, Code (1951), Art. 14, sec. 2 F, requires that every bill of lading must embody a description of the goods or of the

packages containing them. Sec. 23 of the same Act refers to the marks upon packages as a normal part of the description of goods shipped. The Canton bill of lading is headed "Uniform Straight Bill of Lading, Adopted by Carriers, etc." and contains a space headed: "Description of Articles, Special Marks and Exceptions". In this space appear the words "Marked A. T. & Co., Baltimore".

To reinforce the point that notations of marks upon packages are usual entries made in the course of business, see the case of *The Argosy, Herschel Jones Marketing Service, Inc. v. United States,* 1929 A. M. C. 432, 32 F. 2d 530, where it was held that the issuance of bills of lading without showing identifying marks constituted negligence.

That the notation of leading marks of packages on bills of lading is customary and in the usual course of business would thus appear to be beyond question. Nor does there appear to be any doubt but that such notations, admissible as business records, are admissible against persons who are not parties to them. It is daily routine, for example, for hospital records, not made by any party to a case, to be used for and against all parties in the case.

See *Snyder v. Cearfoss,* 190 Md. 151, 159; *Lee v. Housing Auth. of Baltimore,* 203 Md. 453, 458-461; *Shirks Motor Express v. Oxenham,* 204 Md. 626, 635.

We have, therefore, as against Rukert, admissible evidence that 400 bales marked "A. T. & Co." were loaded on the vessel; and were received by Canton and placed in cars ACL 23201 and IC 39048; and that Rukert unloaded and received into its warehouse the bales which were in those cars.

There is thus admissible evidence to support the allegation of the plaintiff that Rukert received bales with his mark, and consequently a dispute of fact upon a material issue which should be submitted to a trier of fact.

With respect to Herd, the evidence in the case consists of the ocean bill of lading, the Canton bill of lading and the affidavit of Herd's superintendent.

Herd, as stevedore, unloaded 3401 bales, and Canton issued its receipt for that number to the vessel, describing the marks as "Various". It is conceded that Herd made no represen-

tations to anyone as to the marks upon any bale. Herd's affidavit indicates that its men were looking for bales marked "A. T. & Co." but asserts that they found none.

As pointed out above, the ocean bill of lading constitutes admissible evidence that 400 bales marked "A. T. & Co." were on the ship. The affidavit of Herd's superintendent states that Herd unloaded 3401 bales of broom corn which constituted all of the broom corn known by it to have been upon the vessel. The affidavit further states that the 400 bales of broom corn consigned to Tellez were loaded into the freight cars designated for them. Herd does not say that these 400 bales were marked "A. T. & Co.". On the contrary it states that all of the 3401 bales were carefully inspected by it, and that none of these bales bore that mark. Herd also relies on the Canton bill of lading which acknowledges the receipt from the vessel of 400 bales marked "A. T. & Co.".

As pointed out above, the ocean bill of lading and the Canton bill of lading are admissible with respect to Herd and Canton. Canton may, however, be able to convince the trier of the facts that Canton's description of the markings on the 400 bales is erroneous. Furthermore, the plaintiff may be able to convince the trier of the facts that the description of the markings in the ocean bill of lading is true.

If Canton's acknowledgment by its bill of lading that it received 400 bales marked "A. T. & Co." is true, then Herd did in fact deliver to Canton 400 bales marked "A. T. & Co.". But Canton disputes, and is entitled to dispute, the correctness of its own bill of lading. If therefore Canton should be successful in showing that its acknowledgment of the receipt of 400 bales marked "A. T. & Co." is incorrect, Herd would still be confronted by the recital contained in the ocean bill of lading that 400 of the bales unloaded by it were marked "A. T. & Co.". Herd could, of course, dispute the correctness of the ocean bill of lading, but such a situation would raise a clear dispute of material fact as to what Herd received; what Herd did with the 400 bales so marked; and whether it fulfilled its duty as to their proper disposition and delivery.

Stated more succinctly, the fact that both Herd and Canton deny the correctness of the recitals as to marks in both bills

of lading, raises a material question of fact with respect to Herd.

The judgment of the trial court is therefore reversed and the case is remanded for further proceedings.

> *Judgment reversed and case remanded for further proceedings in conformity with this opinion, with costs to abide the result.*