## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. GERALD E. ASKIN

[Misc. Docket (Subtitle BV) No. 26, September Term, 1978.]

*Decided June 13, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*J. Martin McDonough, Jr., Assistant Bar Counsel,* for the Commission.

*William Harris Zinman* for Gerald E. Askin.

PER CURIAM:

On December 7, 1978 the respondent was charged by the Attorney Grievance Commission, acting through Bar Counsel, with several violations of the Code of Professional Responsibility. We referred the matter to Judge Robert I. H. Hammerman of the Supreme Bench of Baltimore City pursuant to Maryland Rule BV9 to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Hammerman filed a memorandum setting forth his findings and conclusions.

The Commission and the respondent both filed exceptions to the findings of fact and conclusions of law and the matter was set down for oral argument. After carefully considering the findings of Judge Hammerman which we accept and adopt and hereto append to this opinion, we think a reprimand is the proper sanction.

Therefore, pursuant to Maryland Rule BV11 b 4, Gerald E. Askin is hereby reprimanded. In addition, he is directed to pay the Attorney Grievance Commission the amount of $639.00, representing the costs of the transcripts of the Inquiry Panel and the Supreme Bench.

*It is so ordered.*

## FINDINGS OF FACT

### I. *3110 Woodland Avenue.*

On May 9, 1975, Leo Cramer entered into a contract of sale with Isidore Siavitz for the sale of the fee simple property known as 3110 Woodland Avenue in Baltimore City for the purchase price of $4,000.00. On May 13, 1975, for value received, Mr. Siavitz assigned all of his right, interest and title in the property to Abraham Rachelson, Elsie Rachelson, his wife, Daniel Aiken and Arnita Aiken, his wife.

Mr. Rachelson retained the respondent to be his settlement attorney in this transaction and told the respondent to do whatever had to be done to effect the settlement and transfer the property. At that time Mr. Rachelson was a substantial investor in rental properties, and for the previous ten years had always used the legal services of the respondent to handle the settlements and property transfers.

Settlement on this property was held on May 31, 1975, in the respondent's office, 914 St. Paul Street in Baltimore City. The respondent prepared the deed which Leo Cramer signed at settlement. The respondent prepared a Memorandum of Settlement.

At settlement Mr. Rachelson gave to the respondent a check in the amount of $4,800.00 to cover the entire

transaction, including disbursements to be made for finders' fees as agreed. The respondent retained in his escrow account the sum of $194.10 for the following purposes:

$ 75.00 — Respondent's attorney's fee
11.00 — Recording deed
12.50 — Certificate of lien
6.00 — Judgment report
9.60 — Additional tax due
80.00 — Transfer tax
$194.10

All money given to the respondent at the time of settlement was properly accounted for by him at that time.

After a period of five to six months from the date of settlement, Mr. Cramer told Mr. Rachelson that he was still receiving bills on the property and that the City had advised him that the deed had not been recorded. Mr. Rachelson noticed that he was not receiving the water bills for the property as he had expected, and he was being dunned by the City for the payment of taxes. Mr. Rachelson immediately made numerous unsuccessful efforts to contact the respondent. He attempted to telephone the respondent; he went to his office and home on St. Paul Street and learned that he had moved; he went to the respondent's new office and home at 212 East Eager Street; he wrote to the respondent; and he tried to locate relatives of the respondent. Mr. Rachelson became seriously concerned about the entire transaction.

When his efforts to communicate with the respondent failed, he contacted Leonard A. Orman, Esquire, an attorney and his son-in-law as well. Mr. Orman had originally introduced Mr. Rachelson to the respondent and had many active dealings with the respondent.

Mr. Orman met the respondent in a restaurant and discussed the matter with him, at which time the respondent indicated to Mr. Orman that he had problems but that everything would be taken care of. Several months later, on December 23, 1976, with nothing having transpired, Mr.

Orman wrote to the respondent reminding him of the conference in the restaurant. Mr. Orman also reminded the respondent of his promises at that time that the matter would be taken care of and that Mr. Rachelson would be reimbursed for any monies he may have lost or expended as a result of the respondent's failure to do what he was supposed to do. On August 24, 1977, Mr. Orman again wrote to the respondent acknowledging that the deed had been recorded but pointing out to the respondent that he still had failed to repay the sum of $367.52 due Mr. Rachelson on the matter of taxes and demanded immediate payment thereof. The letters of Mr. Orman were written at the direction of and in behalf of Mr. Rachelson, and the sum mentioned was the figure supplied by Mr. Rachelson to Mr. Orman.

The respondent did record the deed in the Land Records of Baltimore City on July 11, 1977.

On August 26, 1977, James F. Kennedy, an investigator for the petitioner, met with and interviewed the respondent at the latter's place of employment in the State Office Building in Baltimore City. Mr. Kennedy asked the respondent for an explanation for the tardiness in recording the deed. The respondent replied that he had lost the deed during the move of his office and home from St. Paul Street to Eager Street. Mr. Kennedy further asked the respondent his explanation as to the state of the accounting between him and Mr. Rachelson. The respondent replied that he realized Mr. Rachelson had problems at that time and would return money to him. He told Mr. Kennedy that he could not be certain of the amount of money but that he would immediately take care of it.

On August 27, 1977, the respondent wrote to Mr. Rachelson enclosing the deed to the property, expressing his regret for any inconvenience or anxiety caused, and asking Mr. Rachelson to submit to him in writing a statement of any monies advanced by Mr. Rachelson that were originally advanced to the respondent. The respondent assured Mr. Rachelson that reimbursement would be made by return mail.

On August 30, 1977, Mr. Rachelson replied to the respondent thanking him for the deed and advising him that

Mr. Orman had previously sent the respondent a letter with a statement of monies due.

On September 3, 1977, the respondent wrote to Mr. Rachelson enclosing his check in the amount of $367.52 "due you in reference to the above settlement" and again expressed his regrets and apologies.

The respondent testified that 95% of his legal practice was the conducting of real estate settlements involving small residential properties such as the Woodland Avenue property. He testified that in the instant case he intended to record the deed within 30 days. He testified that three weeks after settlement, he looked for the deed but could not find it and attributed this to the fact that he was in the process of preparing to move his office and home. He acknowledges that he did not tell Mr. Rachelson that the deed was lost or misplaced and made no effort to contact him in any respect. He also failed to so advise Mr. Orman when he met him in the restaurant. He explained this failure of communication as being due to his being embarrassed by his procrastination.

The respondent further explained that this was a period of personal depression for him generally, that he was considerably overweight, had diabetes, high blood cholesterol and other medical problems. He testified that he was finding it increasingly difficult to cope with business and everyday problems and realized that the private practice of law was getting to be too much for him but that he "couldn't say no to old clients." He testified that this realization of his inability to effectively practice law began in the late 1960's. The respondent testified that in subsequently going through some old files stored in his basement, he located the Woodland Avenue deed which had been misfiled, and recorded the same on July 11, 1977. He further testified that although Mr. Orman's request to him for remission of $367.52 to Mr. Rachelson for taxes was complied with, there were no taxes due. The respondent testified that he remitted this amount solely because he wanted to get Mr. Rachelson and Mr. Orman "off his back" and accepted them at their word as to what monies were due.

This Court finds that the failure of the respondent to timely record the deed was due solely to his negligence and/or indifference. There was no medical testimony or evidence of any kind to support the petitioner's statements as to his medical or emotional condition at that time. In any event, even if the defendant did suffer from certain emotional or medical problems, this Court does not find from his testimony that they were of such a nature to so disable him from performing the simple task of recording the deed.

This Court finds that the respondent did not properly respond to the inquiries of Mr. Rachelson and Mr. Orman concerning the status of monies with respect to the Woodland Avenue settlement. The respondent admits that he did nothing in response to the letter from Mr. Orman of December 31, 1976, wherein Mr. Orman sought clarification of the status of monies paid and expenses incurred. The Memorandum of Settlement shows that $80.00 was withheld for transfer tax, but the respondent testified that the tax actually paid was $60.00, with no reimbursement being made to Mr. Rachelson for the difference. Where the Memorandum of Settlement shows $9.60 for additional tax, the respondent testified that this was never paid. In the respondent's letter to Mr. Rachelson of August 27, 1977, the respondent made inquiry of Mr. Rachelson as to what monies Mr. Rachelson felt may be due. The respondent testified that he did not know at the time of that letter whether or not he owed anything to Mr. Rachelson and thus acknowledges a lack of any appropriate records of the transaction at that time.

## II. *31-33 South Carey Street*

James F. Kennedy testified that in searching the Land Records of Baltimore City relative to the Woodland Avenue property, he noticed that the deed to the properties 31-33 South Carey Street in Baltimore City, conveyed on August 7, 1976, from Joseph E. Jenkins, Joseph Miller and Grace Miller, his wife, to Eugene Sugar, had not been timely recorded and was not recorded until July 11, 1977.

On November 3, 1977, Mr. Kennedy met with the respondent at the latter's office for the sole purpose of

discussing the Carey Street deed. Mr. Kennedy found the respondent to be very defensive, angry and upset over this matter since no complaint had been filed by the Attorney Grievance Commission of Maryland. The respondent did acknowledge that money passed on the date of settlement and advised Mr. Kennedy that the reason he did not timely record the deed was because it was his practice to put aside deeds until he had accumulated a sufficient number to record at one time. The respondent testified that he had been representing Mr. Sugar, a real estate investor, for a number of years, and that he represented Mr. Sugar in the settlement of the Carey Street properties in the respondent's office on August 7, 1976. The respondent prepared the deed and the settlement sheet. He testified that the reason he did not timely record the deed was because at that time he was very depressed and that he had difficulty coping with business and personal affairs. He admitted that he did not give this explanation to Mr. Kennedy on November 3, 1977, and that in fact his explanation was exactly as Mr. Kennedy testified.

This Court finds the respondent to be inexcusably negligent in the recording of the deed to the Carey Street properties.

## CONCLUSIONS OF LAW

This Court finds from the above facts that the respondent violated the following Disciplinary Rules adopted by the Court of Appeals under Rule 1230, "The Code of Professional Responsibility", as set forth in Appendix F of the Rules:

1. The inexcusable failure of the respondent to timely record the deeds to 3110 Woodland Avenue and 31-33 South Carey Street in the Land Records of Baltimore City is a violation of Disciplinary Rule 6-101 (A) (3), which states:

"Failing to Act Competently.
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him."

2. Although there is no indication that at the time of settlement on May 31, 1975, the respondent failed to properly

and adequately account to Abraham Rachelson for all monies received and expended on the transfer of title to 3110 Woodland Avenue, the respondent failed in his duty to subsequently so account when demanded by his client. The respondent did not expend the monies precisely as he indicated he did when he prepared the Memorandum of Settlement and was not certain at subsequent dates just what monies, if any, were due and owing by him to his client in this matter. These defalcations constitute a violation of Disciplinary Rule 9-102 (B) (3), which states:

"Preserving Identity of Funds and Property of a Client.

(B) A lawyer shall:

(3) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them."

3. The violation of Disciplinary Rules 6-101 (A) (3) and 9-102 (B) (3) places the respondent in violation of Disciplinary Rule 1-102 (A) (1), which states

"Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule."

4. The admissions by the respondent that for many years he has felt incapable of properly representing clients but nonetheless continued to do so is a violation of Disciplinary Rule 1-102 (A) (6), which states:

"Misconduct.

(A) A lawyer shall not:

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."