474 A.2d 1338

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**John Howell SINCLAIR.**

**Misc. (BV) No. 24, Sept. Term, 1983.**

Court of Appeals of Maryland.

May 25, 1984.

Dennis A. Dooley, Waldorf, for respondent.

Glenn M. Grossman, Asst. Bar Counsel, Annapolis (Melvin Hirshman, Bar Counsel, Annapolis, on the petition), for petitioner.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against John H. Sinclair, alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9 b, to Judge Perry G. Bowen, Jr., of the Circuit Court for Calvert County to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Bowen filed his findings as follows:

"In July or early August, 1979 Gregory Powers Maurer contacted the Respondent about the matter of his son's custody. At that time he was married to his second wife. The child in question was in the custody of his first wife.

He was ordered to make payments toward the support of this child through the Bureau of Support Enforcement in Prince George's County. He advised the Respondent that the mother would bring the child to him and leave him for extended periods leading Maurer to believe he would be given custody of his son, but then she would appear and demand the son be returned to her. At the time of this contact, the son was with Maurer but the mother was threatening to come get him again. Maurer was interested in getting the court order changed because while he was getting back the money he was paying through the Bureau of Support Enforcement (the mother would cash the check and give it back to him) she had begun to keep progressively larger amounts of it. The mother was getting her mail at her mother's address but living with a friend. According to Maurer he knew where she was all the time. According to Respondent he did not, and they could not get service on her. Respondent prepared a Petition to change custody and Rule to Show Cause thereon, which required service by October 5, 1979. This was never served. Respondent then prepared a second Petition asking for immediate custody only. When he presented this, the Master declined to recommend it be signed because Maurer actually had the child. Four or five days later, Respondent prepared an Amended Separation Agreement in which the custody was given to Maurer. This was signed by Maurer October 10, 1979 and the mother, October 9, 1979. Thereafter, Respondent told Maurer to stop making payments of child support. Respondent did nothing to notify the Bureau of Support Enforcement about this. When contacted by the probation officer who was supervising Maurer in two unrelated criminal cases, about the fact that Maurer seemed to be seriously delinquent in his support payments, Respondent agreed to send the officer a letter explaining the situation but never sent such a letter.

"In December, 1979 the mother took the child and Maurer never saw her or the child again and does not know where they are.

"Maurer kept getting notices that he owed child support from his probation officer and the Bureau Support Enforcement. Each time he told the Respondent, who advised him 'he would take care of it.' Late in 1981, a warrant was issued for his arrest stating arrearages of thirty five hundred dollars. There was, in fact, some confusion about this. Because the warrant was issued for failure to appear and Respondent had requested a continuance, the warrant was quashed and at a hearing in April, 1982, Maurer was relieved of responsibility for the arrearages. There was some evidence that proceedings are now underway to bring the question of support before the court again.

"Maurer's complaint against Respondent, in his own words, is 'I hired a so called professional and paid him lots of money to take care of one of my problems. He assured me it could be, namely the custody and the child support, everything, and I am still being pulled through the ringer because of his incompetency.' In fact, Maurer never paid Respondent anything for this matter although Respondent was paid for other work he did for Maurer and other members of his family.

"The original jacket of the case of Maurer v. Maurer Equity # 76–1482 in the Circuit Court for Prince George's County was ordered to be returned to the clerk of that court at his request so further pleadings might be filed in it. Photocopies of the docket entries are included and marked Petitioners Exhibit # 2 for identification.

### "CONCLUSIONS

Disciplinary Rule 1–102
'Misconduct.
(A) A lawyer shall not:
  (1) Violate a Disciplinary Rule
  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation
  (5) Engage in conduct that is prejudicial to the administration of justice

(6) Engage in other conduct that adversely reflects on his fitness to practice law.'

"I conclude that Respondent did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation. My analysis of the Respondents conduct, leads me to conclude that he did not make any statement about an existing fact which was false or about which he could not reasonably be mistaken. Nothing he did or did not do, in my opinion, was prejudicial to the administration of justice or adversely reflects on his fitness to practice law.

"I conclude that Respondent did not violate DR 1–102(A)(4)(5)(6)

Disciplinary Rule 6–101

'Failing to Act Competently.

(A) A lawyer shall not:

(3) Neglect a legal matter entrusted to him.'

"I conclude the Respondent did violate this rule when he: 1.) Failed to respond to the inquiries of the Parole and Probation Officer who inquired about Maurer's status. Respondent had advised Maurer not to comply with the court order to pay support. He was on both parole and probation in serious criminal cases. Having agreed to provide written confirmation of his advice to the supervising agent, Respondent's neglect to do so, notwithstanding the repeated request, violated this Rule. 2.) Failed to notify the Bureau of Support Enforcement of the status of this child and his advice to his client. He should have known that the Bureau, in the normal course of its operations, would seek to obtain sanctions against his client. Failure to contact them and advise them about his client's position and the advice he had given violated this Rule.

"I conclude that Respondent violated DR 6–101(A)(3)

Disciplinary Rule 7–101

'Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage of his client during the course of the professional relationship, except as required under DR 7–102(B).'

"I conclude that Respondent did not violate this rule because I can find no evidence that he intentionally failed to seek the lawful objectives of his client or intentionally failed to carry out his contract of employment. Bar Counsel, in argument, abandoned the charge of prejudice or damage. Although I conclude that some of his advise was incorrect, I believe that he intended to represent his client as best he could.

"I conclude that Respondent did not violate DR 7–101(A)(1)(2)(3)."

■ Sinclair excepted to Judge Bowen's findings that he violated Rule 6–101(A)(3) on the ground that the charges were not sufficiently specific to inform him of the misconduct with which he was charged, as required by Rule BV9 c. We disagree. We think the disciplinary petition sufficiently apprised Sinclair of the misconduct with which he was charged.

■ Bar Counsel has recommended a public reprimand as the appropriate sanction in this case. In this connection, he notes that Sinclair previously received a private reprimand for neglect of a client's legal matters in violation of DR 6–101(A)(3).

After careful consideration of the evidence in the case, we agree with Bar Counsel's recommendation that a public reprimand is the appropriate sanction. *See Attorney Griev. Comm'n v. Montgomery,* 296 Md. 113, 460 A.2d 597 (1983); *Attorney Griev. Comm'n v. Askin,* 285 Md. 302, 402 A.2d 486 (1979); *Attorney Griev. Comm'n v. Demyan,* 278 Md. 240, 363 A.2d 966 (1976).

IT IS SO ORDERED: RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN HOWELL SINCLAIR.

ELDRIDGE, Judge, dissenting:

The majority concludes, and I agree with the conclusion, that Sinclair violated DR 6–101(A)(3) by advising his client to ignore the court order to pay support, by failing to notify the Bureau of Support Enforcement of this advice and of the status of his client's child, and by failing to provide sufficient notification of his client's position to the probation officer. In my view, however, the majority is incorrect in holding that a reprimand is the appropriate sanction. Rather, I believe that Sinclair should be subjected to the same sanction as this Court imposes today in the case of *Attorney Griev. Comm'n v. Marano,* 299 Md. 633, 474 A.2d 1332, namely suspension from the practice of law in Maryland for a thirty-day period.

I see no difference between the seriousness of the misconduct found in *Sinclair* and that found in *Marano* so as to warrant a reprimand in the former case and a thirty-day

suspension in the latter one. Both Sinclair and Marano had previously been issued private reprimands for the negligent representation of a client. Moreover, in the cases decided today, both of the attorneys failed to care diligently for their clients' affairs while repeatedly assuring their clients that matters either were already resolved or shortly would be resolved. Furthermore, unlike Marano, Sinclair has offered no excuses for his negligent representation.

Sinclair's client, Maurer, obtained professional services for two purposes: to gain custody of his child from his ex-wife and to terminate his support obligations. To date, custody of the child remains with the mother. In addition, while Maurer has been released from his duty to pay support, this only was achieved after a warrant was issued for Maurer's arrest. Thus, despite the trial judge's conclusion to the contrary, Maurer suffered injury as a result of his attorney's negligent conduct.

The following facts are particularly relevant. Sinclair failed within the required time period to serve Maurer's ex-wife with a Rule to Show Cause because, according to Sinclair, her whereabouts were unknown. Nevertheless, four days after the final deadline for service, Maurer's ex-wife appeared in Sinclair's office to sign an amended separation agreement giving custody to Maurer. However, because Sinclair failed to secure court approval of the agreement, legal custody remained with the mother. Sinclair further jeopardized his client's attempt to gain custody by failing to take an exception to the recommendation of the Domestic Relations Master denying the petition for immediate custody. Sinclair also was negligent in advising his client that he was no longer under a legal obligation to make support payments. Not only did Sinclair fail to secure a court order so stating, but he continued to advise his client to ignore notices from the Bureau of Support Enforcement informing him that his payments were in arrears. Furthermore, when Sinclair was questioned by Maurer's probation officer, Sinclair assured the officer that the obligation had been terminated and that he would

provide her with a letter explaining the situation. He never sent the letter. Finally, even after the police came to Maurer's home to execute a warrant for his arrest, Sinclair persisted in advising his client that he was not under a legal obligation to pay support, when in fact he still was.

When a client is unable to gain custody of his child and is almost hauled off to jail as a result of his attorney's negligent representation, the attorney's misconduct is as serious as that of an attorney whose negligence causes his client to lose the benefit of insurance proceeds. Thus, I can not agree with the majority's conclusion that Sinclair should receive a reprimand while Marano receives a suspension from the practice of law. I find no principled basis for the different sanctions imposed by the majority in the two cases. In my view, the appropriate sanction for Sinclair, as for Marano, is suspension from the practice of law for a period of at least thirty days.