490 A.2d 236

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**John Howell SINCLAIR.**

**Misc. Docket (Subtitle BV) No. 16, Sept. Term, 1984.**

Court of Appeals of Maryland.

April 8, 1985.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel, to Attorney Grievance Commission of Maryland, Annapolis, for petitioner.

Dennis A. Dooley, Waldorf, for respondent.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

PER CURIAM.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against John Howell Sinclair, alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9 b, to Judge Rich-

ard J. Clark of the Circuit Court for Prince George's County to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Clark filed detailed findings and conclusions as follows:

*"Findings of Fact*

"1. John Howell Sinclair was admitted as a member of the Bar of the Court of Appeals of Maryland on July 7, 1969 and maintains an office for the practice of law at 3623 Eastern Avenue, Mt. Ranier, Maryland 20822.

2. On October 22, 1979, Tanya Eileen Worley was employed as a cashier for Coleman Cadillac Company (Coleman) in Bethesda, Maryland, and at or about that time Coleman was in the process of remodeling the building at which it carried on its business.

3. On October 22, 1979, Mrs. Worley was at her place of employment working at her duties as cashier. At approximately 9:10 a.m., while she was standing in front of the cashier's window, an area that had been recently remodeled, the pane of glass fell out of the cashier's window and struck Mrs. Worley.

4. As a result of being struck by the pane of glass, Mrs. Worley received cuts on her right arm, her right shoulder, and the calf of her right leg and she was taken by ambulance from her place of employment to the emergency room of Surburban Hospital.

5. Mrs. Worley's cuts were cleaned and dressed at Suburban Hospital, and eleven (11) stitches were required to close the wound on her right arm. Following the emergency treatment, she was released from the hospital.

6. Mrs. Worley subsequently retained the services of Allen Feigelson, Esquire, to file a claim for workmen's compensation benefits on her behalf, and she advised Mr. Sinclair at their initial interview that Mr. Feigelson had filed such a claim.

7. On December 10, 1979, the Workmen's Compensation Commission passed an award of compensation in Claim No.

A767266 directing that Coleman Cadillac Company, Employer, and Travelers Insurance Company, Insurer, pay to Mrs. Worley compensation at the rate of $114.00 per week during the continuance of her temporary total disability. Mrs. Worley missed one (1) week of work and was paid a total of $114.00 in workmen's compensation benefits.

8. On January 16, 1980, Mrs. Worley met with Mr. Sinclair at his office and the two of them discussed her case.

9. At this initial interview, Mrs. Worley described to Mr. Sinclair the accident of October 22, 1979 and advised him that two of her fellow employees, a Mr. Dobyns (recorded by Mr. Sinclair in the notes of his initial interviews as "Dobbins") and a woman named Anetta (her last name was unknown to Mrs. Worley at the time of the interview), had advised her that the window in the recently remodeled cashier's office had been installed by Bob's Custom Cabinets. Mrs. Worley and Mr. Sinclair further discussed Mrs. Worley's medical condition, and Mrs. Worley provided Mr. Sinclair with the names and addresses of six doctors whom she had seen for the injuries she received on October 22, 1979.

10. On January 16, 1980, Mrs. Worley signed a written Agreement of Retainer, retaining the services of Mr. Sinclair to prosecute her claim for damages "against any and all persons, companies, or corporations which might be liable to us, for personal injuries ... sustained on or about 10/22/79...." There is no evidence before the undersigned from which a determination can be made as to whether Mrs. Worley retained the services of Mr. Sinclair to pursue her claim for workmen's compensation benefits.

11. On January 17, 1980, Mr. Sinclair mailed to Bob's Custom Cabinets (Bob's) a letter advising it of the October 22, 1979 accident at Coleman Cadillac and the fact that Mrs. Worley was injured and advising Bob's that "We have been advised that your company installed this glass." The letter further requested that Bob's provide Mr. Sinclair with the

name of its insurance carrier or, in the absence of liability insurance, contact him directly.

12. At the conclusion of the initial interview, Mr. Sinclair requested that Mrs. Worley provide him with the names of any witnesses who could be helpful in proving her case, and Mrs. Worley agreed to do so.

13. Mrs. Worley telephoned Mr. Sinclair on four or five occasions after January, 1980, and on more than one occasion provided him with the names of Jimmy Dobyns and Anetta Brawley, witnesses to the fact that Bob's had done the work on the remodeled cashier's office, including the installation of the window.

14. Between January, 1980 and August 26, 1982, with the exception of speaking to Mrs. Worley when she called or dropped by the office about the case, Mr. Sinclair took no action to pursue Mrs. Worley's Claim.

15. On August 26, 1982, Mr. Sinclair spoke to Mr. Coleman of Coleman Cadillac and was told by Mr. Coleman that Mrs. Worley's claim was frivolous, that she was trying to get something for nothing, that Bob Osmond of Bob's Custom Cabinets was one of the finest young men that Mr. Coleman knew, and that Mr. Coleman would not cooperate with him in pursuing Mrs. Worley's claim.

16. Between August 26, 1982 and October, 1982, Mr. Sinclair, with the exception of speaking to Mrs. Worley, performed no investigation of Mrs. Worley's claim and took no action to pursue the same.

17. On October 21, 1982, Mr. Sinclair filed suit in the Circuit Court for Montgomery County, Maryland, on behalf of Mrs. Worley against Bob's Custom Cabinets and Courtertops, Inc.

18. On March 16, 1983, Bob's filed a Motion for Summary Judgment accompanied by a Memorandum of Points and Authorities, Notice Pursuant to Maryland Rule 610, and an Affidavit in Support of Motion for Summary Judgment. The Affidavit was subscribed to by Robert E. Osmond, who swore under oath that he was the owner of the defendant

corporation and its only employee and that the contract between the defendant and Coleman was for the installation of certain cabinets for the cashier's office and did not include the installation or any work associated with the window pane or glass in the cashier's office. The Affidavit further stated that window pane and glass were not touched, loosened, or adjusted or contacted by him in any way while performing his work at Coleman Cadillac.

19. By Order dated March 21, 1983, the Circuit Court for Montgomery County granted Bob's Motion to add Traveler's Insurance Company (Coleman's workmen's compensation carrier) as a party plaintiff.

20. By Order dated April 18, 1983, the Circuit Court for Montgomery County, Maryland, entered an Order for Summary Judgment, entering judgment in favor of Bob's Custom Cabinets and Countertops, Inc., and against Eileen Worley. The Order for Summary Judgment notes, and a review of the file confirms, that no opposition was filed in response to Bob's Motion for Summary Judgment.

21. On May 11, 1983, Mrs. Worley contacted Mr. Sinclair and advised him that Dr. Rasher, her treating physician, was prepared to render a medical report on her condition. Mr. Sinclair advised her for the first time that the defendant had filed a Motion for Summary Judgment and that affidavits would have to be secured from Mr. Dobyns and/or Mrs. Brawley in order to oppose the motion.

22. At the time of the May 11, 1983 telephone conversation, summary judgment had already been entered against Mrs. Worley.

23. Mr. Sinclair, after being retained by Mrs. Worley, never contacted Mr. Dobyns or Mrs. Brawley, witnesses whose names had been provided to him by Mrs. Worley. He never contacted any of the doctors who treated Mrs. Worley nor received any hospital records or bills; however, Mrs. Worley had agreed to tell Mr. Sinclair when Dr. Rasher, her treating physician, would be in a position to render a medical report, and the purpose of her May 11,

1983 telephone call was to inform Mr. Sinclair that Dr. Rasher was now in a position to render such a report.

24. Mr. Sinclair never contacted Mrs. Worley concerning the interrogatories propounded to her by Bob's or the Motion for Summary Judgment filed by Bob's and filed no opposition to the motion or requested an extension of time in which to file such opposition.

25. With the exception of his letter of representation mailed in January of 1980, Mr. Sinclair never contacted Bob's or any of its owners concerning Mrs. Worley's claim prior to filing suit in the Circuit Court for Montgomery County.

### Conclusions of Law

Maryland Rule BVIj defines misconduct as follows:

"Misconduct" means an act or omission by an attorney, individually or in concert with any other person or persons which violates the Disciplinary Rules of the Code of Professional Responsibility, as adopted by Rule 1230, whether or not the act or omission occurred in the course of an attorney-client relationship.

The Court of Appeals of Maryland, by Rule 1230 of the Maryland Rules, has adopted the Code of Professional Responsibility of the American Bar Association (Code) as set forth in Appendix F of the Maryland Rules.

Canon 1 of the Code states: "A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession"; and Disciplinary Rule DR 1–102 provides as follows:

DR 1–102 Misconduct.

(A) A lawyer shall not:

    (1) Violate a Disciplinary Rule.

    (2) Circumvent a Disciplinary Rule through actions of another.

    (3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Canon 6 of the Code states: "A Lawyer Should Represent a Client Competently"; and Disciplinary Rule DR 6–101 provides as follows:

DR 6–101 Failing to Act Competently.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

Canon 7 of the Code states: "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law"; and Disciplinary Rule 7–101 provides as follows:

DR 7–101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he

may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

(B) In his representation of a client, a lawyer may:

(1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.

(2) Refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal.

Applying the facts found above to the aforesaid Canons of Professional Ethics and Disciplinary Rules adopted pursuant thereto, the Court makes the following conclusions of law:

1. Mr. Sinclair did not violate Disciplinary Rule 6–101(A)(1) since he was competent to handle Mrs. Worley's claim for damages arising out of her October 22, 1979 accident without associating with him another attorney.

2. Mr. Sinclair violated Disciplinary Rule 6–101(A)(2) by failing to contact any witnesses except Mr. Coleman, a person hostile to Mrs. Worley's claim, and adequately investigate the facts which gave rise to the incident causing his client's injuries.

3. Mr. Sinclair violated Disciplinary Rule 6–101(A)(3) by neglecting to take any action to prosecute his client's claim from January, 1980 to August 26, 1982, the date on which he spoke to Mr. Coleman, and thereafter taking no further action with respect to Mrs. Worley's claim until the date he filed suit.

4. Mr. Sinclair violated Disciplinary Rule 6–101(A)(3) by failing to notify his client that interrogatories had been propounded to her and a Motion for Summary Judgment had been filed by Bob's and by neglecting to prepare an

opposition to Bob's Motion for Summary Judgment or requesting additional time for filing the same.

5. Mr. Sinclair violated Disciplinary Rule 7–101(A)(1) by intentionally failing to respond to interrogatories propounded to his client and failing to oppose the Motion for Summary Judgment filed against her in the Circuit Court for Montgomery County.

6. Mr. Sinclair violated Disciplinary Rule 7–101(A)(2) by intentionally failing to carry out his contract of employment with Mrs. Worley. The Court concludes that the initial failure to take any action on his client's claim pursuant to the contract of employment was a matter of negligence; however, under all of the facts found above, it is the Court's opinion that it can reasonably conclude both from Mr. Sinclair's lack of any action on behalf of his client for almost three years, despite her numerous telephone calls to him, and from his failure to take any action after filing suit to oppose Bob's Motion for Summary Judgment, that his decision not to carry out his contract of employment with Mrs. Worley was intentional.

7. Mr. Sinclair violated Disciplinary Rule 7–101(A)(3) since his intentional failure to pursue his client's claim resulted in its ultimate dismissal beyond the statute of limitations, thereby prejudicing her right to seek damages for her injuries.

8. Mr. Sinclair violated Disciplinary Rule 1–102(A)(1) by violating Disciplinary Rule 6–101(A)(2), Disciplinary Rule 6–101(A)(3), Disciplinary Rule 7–101(A)(1), Disciplinary Rule 7–101(A)(2), and Disciplinary Rule 7–101(A)(3).

9. Mr. Sinclair has committed an act of misconduct as defined in Maryland Rule BV1j by violating Disciplinary Rule 1–102(A)(1), Disciplinary Rule 6–101(A)(2), Disciplinary Rule 6–101(A)(3), Disciplinary Rule 7–101(A)(1), Disciplinary Rule 7–101(A)(2), and Disciplinary Rule 7–101(A)(3)."

Neither Sinclair nor Bar Counsel excepted to any of Judge Clark's findings. Bar Counsel has recommended that Sinclair be suspended from the practice of law for a

period of one year. He points out that Sinclair was issued a private reprimand in April of 1978, the Review Board having found that he violated DR 6–101(A)(3) (failing to act competently) in connection with two instances of neglect of a client's legal matters (involving a divorce and a personal injury claim). We note also that Sinclair was publicly reprimanded for neglect of another client's legal matter, the misconduct occurring between October 1979 and late 1981. *See Attorney Griev. Comm's v. Sinclair,* 299 Md. 644, 474 A.2d 1338 (1984).

In the present case, Sinclair's neglect of his client's case was continuous over a three-year period and his misconduct ultimately prejudiced his client's right to seek damages for her injuries. Through his attorney at the hearing before us, Sinclair candidly admitted that there were no mitigating circumstances in explanation of his misconduct, although he maintained that his inaction was not intentional but only negligent.

After carefully considering the matter, we accept the findings of Judge Clark and conclude, in the circumstances, that a one-year suspension is the appropriate sanction. In so holding, we recognize that Sinclair's misconduct, viewed in light of his prior derelictions, comes perilously close to warranting the extreme sanction of disbarment. That we do not impose that sanction in this case will undoubtedly be of some solace to Sinclair. But our action here should in no event be viewed as an indication that neglect of client affairs, no matter how gross, will never lead to disbarment. *See Maryland St. Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975).

Sinclair's suspension shall commence thirty days from the date of the filing of the opinion in this case. Prior to termination of the suspension, Sinclair shall pay all costs of the disciplinary proceedings.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PUR-

SUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN HOWELL SINCLAIR.

ORTH, Judge, dissenting:

The uncontested factual findings with respect to the professional conduct of John Howell Sinclair in this case and his past derelictions of record in other cases demonstrate to my complete satisfaction that he is no longer entitled to retain his license to practice law in this State. I would disbar him forthwith.