607 A.2d 909

ATTORNEY GRIEVANCE COMMISSION

v.

John William KEISTER.

Misc. (Subtitle BV) No. 4 Sept. Term, 1991.

Court of Appeals of Maryland.

June 18, 1992.

Melvin Hirshman, Bar Counsel and Walter D. Murphy, Jr., Deputy Bar Counsel, for Atty. Grievance Comm'n, for petitioner.

John William Keister, pro se.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The Attorney Grievance Commission, the petitioner, filed a Petition for Disciplinary Action against John William Keister, the respondent, in which it alleged both the respondent's misconduct [1] and incompetency.[2] With regard to the former, violations of Rules 1.15 and 8.4 [3], of the Maryland

---

1. Maryland Rule BV1 k defines "misconduct" as "an act or omission by an attorney, individually or in concert with any other person or persons which violates the Disciplinary Rules of the Code of Professional Responsibility, as adopted by Rule 1230, whether or not the act or omission occurred in the course of an attorney-client relationship."

2. Maryland Rule BV1 i defines "incompetent" as being "unable to render adequate legal service by reason of mental or physical illness or infirmity, or addiction to or dependence upon an intoxicant or drug."

3. Rule 1.15 Safekeeping Property
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Subtitle BU of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
 (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall

Rules of Professional Conduct, *see* Rule 1230, Appendix, as well as Maryland Code (1957, 1987 Repl.Vol.) Art. 10, § 44,[4] Maryland Code (1972, 1989 Repl.Vol.), §§ 10–301–307 of the Business Occupations and Professions Article [5] and the BU Rules [6] were charged. The allegations that the respondent was incompetent "as a result of his dependency on alcohol, cocaine, and possibly other drugs, during the time period set forth in this petition," specified violations of Rules 1.1 and 1.16.[7] The petition was based on two complaints filed

---

promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of the property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

Rule 8.4 Misconduct

It is professional misconduct for a lawyer to:

* * *

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

4. Maryland Code (1957, 1987 Repl.Vol.) Article 10 § 44, until repealed effective October 1, 1989, prohibited lawyers from co-mingling personal and client escrow funds. *See Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 397, 593 A.2d 1087, 1088 (1991).

5. Part I of Subtitle 3 regulates Attorney Trust Accounts, *i.e.,* accounts, including escrow accounts, maintained by an attorney at a financial institution for the deposit of trust money. § 10–301(b). Section 10–306 prohibits use of trust money for a purpose other than that for which it is entrusted to the lawyer. Section 10–307 makes willful violation of the provisions of Part 1 subject to disciplinary proceedings under the Maryland Rules.

6. Rule BU7 a provides:

a. *General Prohibition.*

An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule BU4 or permitted to be so deposited by section b. of this Rule. Rule BU4 specifies the funds that must be deposited in a trust account while subsection b. of BU7 excepts, *inter alia,* that portion of funds which "potentially" may be paid to the attorney or law firm until the time that the attorney or law firm becomes entitled to them.

7. Those Rules provide:

against the respondent, both involving the respondent's handling of his escrow account.

Judge Joseph F. Murphy, Jr., of the Circuit Court for Baltimore County, to whom the matter was referred pursuant to Maryland Rule BV 9b, held hearings on the petition.[8] Having requested, and received from each of the parties, proposed findings of fact and conclusions of law, Judge Murphy accepted the petitioner's submittal and rejected the respondent's.[9] He concluded that the respondent committed each of the violations alleged.

---

Rule 1.1 *Competence*
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
Rule 1.16 *Declining or Terminating Representation*
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
\* \* \*
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;....

8. This matter was originally referred to Judge James T. Smith, Jr. by order dated June 6, 1991; however, when Judge Smith was unable to hear the case because of his acquaintance with one of the witnesses, by order dated 26 August 1991, his designation was rescinded and Judge Murphy was designated to hear and determine the allegations of the petition.

9. Judge Murphy did make some changes in the petitioner's submitted findings of fact and conclusions of law. Most notably, addressing the Pearl complaint, he expressly noted his agreement with the Review Board "that respondent did not misappropriate clients' funds, as he never intended to permanently deprive the clients of their funds." Judge Murphy also wrote in his finding "that alcohol and drug abuse [is] the [cause] of respondent's inability to comply with his duties as a lawyer" and that "In all other respects" he agreed with the findings, observations and conclusions of Dr. Henderson, who conducted the physical and mental examination. Penultimately, Judge Murphy interlineated his rejection of the "Conclusions Of Fact and Law" submitted by the respondent. Finally, Judge Murphy urged the Court to "act upon Bar Counsel's petition as quickly as possible."

## I.

### A.

At issue in the complaint of Susan Waranch was the respondent's handling of funds acquired on behalf of Evan Shifren, whom he represented in connection with PIP and third-party liability claims arising out of an accident in which Shifren was involved. The respondent obtained a check for $278.00 from the Harleysville Mutual Insurance Company to pay Waranch Physical Therapy, P.A. for treatment it rendered to Shifren. On June 26, 1989, he placed that check, along with others totaling $1,055.09, into his First National Bank escrow account, which at that time, was overdrawn by $140.01. Between June 26 and June 28, the respondent wrote checks on that account. Judge Murphy found that, rather than being for the benefit of the client or Waranch Physical Therapy, P.A., however, the checks that cleared "were written in whole or in part for Respondent's personal use without the knowledge, authority or consent of Evan Shifren". On June 28, 1989, the account was overdrawn by $23.59. Judge Murphy did not believe, as the respondent contended, that the money in the account was actually the respondent's; he rejected the respondent's testimony that he gave Shifren cash in exchange for the checks. Waranch Physical Therapy, P.A. was ultimately paid, with different funds, in October 1989. The check the respondent issued to it on August 10, 1989 was returned twice, once for non-sufficient funds and the second time, because the account was closed.

Judge Murphy found that the respondent's escrow account was used for business and personal use and for handling clients' funds, thus, that he "continually co-mingled his funds with his clients' funds."

### B.

David S. Pearl, Esq. filed a complaint against the respondent on behalf of his client, Edward Cohen, M.D. In payment for treatment given to his client, Barbara Spainh-

our, the respondent, on or about January 10, 1990, wrote a check for $585.00, payable to Edward Cohen, M.D. on the respondent's escrow account at the Commercial Bank. That account was used for client funds, as well as personal and business use, and, at that time, was overdrawn. The check was returned for non-sufficient funds, but ultimately paid from another source. Judge Murphy found that the respondent continually co-mingled his funds with his clients funds in violation of Rule 1.15, Article 10, § 44, § 10–301 *et seq.* of the Business Occupations and Associations Article, and the BU Rules.

Like the Inquiry Panel, with which the Review Board agreed, Judge Murphy expressly found that the respondent did not misappropriate any of his clients' funds, as he "never intended to criminally deprive the clients of their funds."

## II.

Before the Inquiry Panel, and again in his answer to the Petition for Disciplinary Action, the respondent admitted having had a substance abuse—cocaine and alcohol—problem during the time when the charged violations occurred. Before the Inquiry Panel, he testified that his addiction, when at its worst from June, 1989 through the end of that year, cost him $500 to $1,000 per week. He denied, however, that it ever affected his professional life or competence. Richard E. Vincent, Director of Lawyer Counseling for the Maryland State Bar Association, testifying on the respondent's behalf, offered that the respondent had received in-patient drug treatment at Changing Point and had continued out-patient treatment and counseling. He opined that, although the respondent was still addicted, he did not believe the respondent had used drugs since the end of 1989. Unlike the respondent, Mr. Vincent said that the substance abuse carried over into the respondent's professional life.

In its recommendation to the Review Board, the Inquiry Panel, referring to both complaints, stated its belief that "Respondent's practice of law requires further supervision due to his addiction, and the Review Board and/or the court is the appropriate body to do so."

The Review Board referred to the respondent's substance abuse in both cases. In the Pearl case, under "General Information", it summarized the testimony concerning its extent.[10] The reference in the Waranch case was less pointed; the Board mentioned the "General Information" section of the Pearl decision. It also wrote: "His failure to monitor his escrow account was a result of his substance abuse and ... during the period in question, he was in the worst part of his addiction." In neither case did it explicitly find that the respondent was then, or had been, incompetent "as a result of his dependency on alcohol, cocaine, and possibly other drugs," within the meaning of Maryland Rule BV1 i. On the contrary, in the Pearl Report and Decision, the Review Board stated:

> [The Inquiry] Panel found no misappropriation of clients' funds, that respondent adequately represented his clients and the handling of their cases, that he had made no misrepresentation to his clients, that he had given no satisfactory answer as to the bad checks in escrow accounts with insufficient funds and that he did not separate his monies from that of his clients or third parties.

The Review Board did not disagree with those findings.

Nor, in either case, did the Board, state that the respondent had violated Rules 1.1 or 1.16. It simply agreed with the Inquiry Panel that, in both cases, the respondent had violated Rule 1.15(a) and § 10–301, *et seq.* of the Business and Occupations Article. Consequently, in both cases, "[b]y a vote of 13 for, none against and no abstentions, the Board recommended that charges be filed."

---

**10.** The respondent's substance abuse was directly, and extensively, addressed by the Inquiry Panel.

In addition to the specific violations mentioned by the Inquiry Panel and the Review Board, Bar Counsel charged in the Waranch case, but not the Pearl case, a violation of Disciplinary Rule 8.4. In both the Pearl and Waranch cases, Bar Counsel brought charges involving the respondent's competence adequately to provide representation and to practice law. Bar Counsel moved for, and Judge Murphy ordered, a physical and mental examination of the respondent.

The examination was conducted by John M. Henderson, M.D. In the report he submitted to the court, Dr. Henderson opined that, the respondent had been, and may still be, addicted to cocaine and alcohol. His addiction to cocaine started, he believed, in 1987 and continued at least until he was admitted to the Changing Point treatment facility. He asserted that the respondent has abused alcohol for the majority of his adult life. In Dr. Henderson's view, the addictions "significantly diminished" the respondent's professional capabilities. Indeed, he thought that the addiction caused, in whole or part, the respondent's mismanagement of his escrow account. Dr. Henderson also expressed doubt that the respondent has stopped abusing cocaine and alcohol, noting that his urine revealed the presence of cocaine metabolites when he was tested during his visit to his office. Consequently, Dr. Henderson observed that the respondent's steps to help himself and get proper treatment have been erratic and inconsistent and that he has failed to conform to the recommendations of Richard Vincent. Dr. Henderson concluded:

> [The respondent's] ability to manage his law practice is diminished; his motivation is also lowered, and he appears to be functioning marginally at best in all areas of his life including his practice.

This observation was based, Dr. Henderson said, on his belief that the respondent had not stopped all drug use.

Although the respondent and Mr. Vincent testified essentially as they had before the Inquiry Panel, Judge Murphy agreed with Dr. Henderson that the respondent was still

abusing cocaine and alcohol and was inconsistent and erratic in helping himself with those problems. He found "that alcohol and drug abuse are the causes of respondent's inability to comply with his duties as a lawyer."

## III.

Both parties excepted to the court's findings of fact and conclusions of law.

### A.

The petitioner excepted to the court's conclusion that "Respondent did not misappropriate client funds as he never intended to permanently deprive the clients of their funds." It argues, relying on, *inter alia, Attorney Grievance Commission v. Pattison,* 292 Md. 599, 609–610, 441 A.2d 328, 333 (1982), that an intent permanently to deprive a client is not a necessary element of misappropriation of clients funds by an attorney.[11] Whether this exception has merit must await the disposition of one of the respondent's exceptions. Because, as we shall see, the respondent prevails on the argument that the misappropriation charge was improperly brought, we need not address the petitioner's exception. *Cf. Attorney Griev. Comm'n v. Berger,* 326 Md. 129, 131, 604 A.2d 58 (1992); *Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991).

### B.

The respondent took four exceptions. Two of them—that he did not receive a fair hearing and to the total acceptance of the petitioner's conclusions of fact and law and the total rejection of his own—are interrelated. The latter exception does double duty by also being one of the reasons for the petitioner's perception that he did not re-

---

**11.** In *In re: Harrison,* 461 A.2d 1034, 1036 (D.C.App.1983), the District of Columbia Court of Appeals made this very same point. The petitioner also relies upon the respondent's testimony concerning his use of his clients' funds.

ceive a fair hearing. That Judge Murphy ignored portions of Dr. Henderson's testimony favorable to him, and did not consider evidence concerning a serious automobile accident in which he was involved, and which caused him to suffer post-traumatic stress syndrome, as well as Judge Murphy's failure to formulate his own findings of fact and conclusions of law, in his view, further buttress his conclusion. Further, the court's ruling on an evidentiary matter, which we address *infra*, also contributed to the respondent's belief that Judge Murphy preferred the petitioner's case to his own. The record does not support the respondent. Those exceptions are overruled.

### C.

The respondent also excepted "to the court's refusal to strike all charges that were filed against the Respondent to the Attorney Grievance Commission that are not under the direction of the Review Board as applied by the BV Rules." He argues that Rule BV9 a, which provides that "[c]harges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board," given its use of the word "shall", which is mandatory, coupled with its requirement that Bar Counsel act at the "direction" of the Review Board, restricts Bar Counsel's power to charge; it may only file those charges that the Review Board directs. In this case, the respondent asserts that the Review Board, in each case, authorized two charges; therefore, Bar Counsel could not bring more.[12]

### 1.

Addressing the misappropriation issue, the petitioner rejoins that the facts found by the Inquiry Panel and accepted by the Review Board support the charges brought and, in

---

**12.** At oral argument, the respondent argued that Bar Counsel did not act timely to bring the charges authorized since the letter from the Review Board directed charges to be filed within 30 days and Bar Counsel did not do so. Maryland Rule BV9 does not, however, address when the authorized charges must be filed.

addition, the "direction" of the Review Board does not expressly preclude them. The petitioner justifies the Rule 8.4 charge, brought in the Waranch case only, by reference to the Review Board's decision in the Pearl case. It points out that the charge could have been sustained in both cases. Nevertheless, based on the evidence in the Pearl case, the Inquiry Panel explicitly found, and the Board agreed, that the respondent had not misappropriated client funds or misrepresented facts to his client, while in the Waranch case, the record was silent on those points. Thus, looking at the Board's decision in the two complaints, the petitioner argues that it had more "elbow room" to charge misappropriation in the Waranch case.

In *Attorney Grievance Commission v. McBurney*, 282 Md. 116, 383 A.2d 58 (1978), we considered an issue very much like that presented here. There, Bar Counsel's petition alleged that McBurney violated portions of three disciplinary rules. The factual predicate for the petition consisted of the following: McBurney's deposit of client funds in his personal checking account; his writing of two checks on that account, both made payable to the client, that were not honored because of insufficient funds; and McBurney's payment of the client some months after McBurney had received the funds. 282 Md. at 118, 383 A.2d at 60. Before the three judge panel, McBurney successfully argued that only one of the violations—DR 9–102(A), pertaining to the preservation of the identity of funds and the property of a client—was properly before it. He maintained that the other charges had not been before the Inquiry Panel which had earlier considered the matter, 282 Md. at 118, 383 A.2d at 60 and, therefore, were never forwarded to the Review Board for its consideration. 282 Md. at 118–19, 383 A.2d at 60. He argued that inasmuch as the Inquiry Panel dismissed an allegation pertaining to counsel's competence "and only sent forward the single charge [of] co-mingling of his client's funds with his own funds", Bar Counsel should not have framed the additional charges. 282 Md. at 119, 383 A.2d at 60.

We sustained Bar Counsel's exception. The nature of the procedure prescribed by the rules was critical to our analysis. Having reviewed the rules, we concluded that the proceedings before the Inquiry Panel were like those before a grand jury, 282 Md. at 122, 383 A.2d at 62, and those before the three-judge panel [13] were analogous to a hearing before a master in chancery. 282 Md. at 123, 383 A.2d at 62. Thus, we pointed out, it is the "complaint that an attorney has committed an act of misconduct", *i.e.*, the operative facts alleged by the complainant as constituting the misconduct, that is referred to the Inquiry Panel. 282 Md. at 122, 383 A.2d at 62. We then said:

> What McBurney fails to recognize is that before the Inquiry Panel he was responding to the factual allegation that he placed funds of his client ... in his own personal account, that he did not attempt to pay over those funds to [his client] until some three months after the settlement, that his actions are susceptible of an inference that he had invaded those funds since he had an insufficient amount on deposit in his account to pay the sum due [his client] when each of the two checks was presented, and that it was not until about seven months after the settlement and more than three months after the first check was drawn that [the client] received his money. The Inquiry Panel found reason to believe this allegation, just as a grand jury may find probable cause. The Review Board agreed and directed that charges be filed. Bar Counsel then framed the charges, noting the disciplinary rules which such charges would violate, just as a prosecutor would frame the formal charges of an indictment after a grand jury has returned a presentment. It is these charges in the petition to us, as framed by Bar Counsel, against which this attorney must defend himself.

282 Md. at 123–24, 383 A.2d at 62. Furthermore, we explained:

---

**13.** Until September 22, 1978, when we amended the rules, Rule BV10 c required that the hearing be conducted by a three judge panel.

The command of Rule BV 9c that "[t]he charges ... be sufficiently clear and specific reasonably to inform the attorney proceeded against of any misconduct charged" does not require Bar Counsel when he petitions us for disciplinary action against an attorney to say that the alleged conduct is a violation of a specific rule. It is the factual allegation against which the individual must defend himself. If Bar Counsel wishes to specify a violation of certain disciplinary rules in the petition to us, then certainly he should, as he did here, select all rules which conceivably might have application to the facts of the particular case, because he becomes limited in the disciplinary action by such rules as he selects.

282 Md. at 123–24, 383 A.2d at 62–3.

The petitioner concedes that, because the Board in the Pearl case expressly stated that it agreed with the Inquiry Panel's finding that the respondent did not misappropriate client funds, it would have been improper to, hence, it could not, charge misappropriation in that case. It took a different approach in the Waranch case, however. Because the Board did not state, explicitly, that it agreed with the Inquiry Panel's identical finding on the issue of misappropriation, without which the facts permitted an inference that the respondent did misappropriate client funds, the petitioner asserts that it was empowered to charge misappropriation in that case. The petitioner thus interprets *McBurney* to permit the framing of a charge specifically found by the Inquiry Panel not to have been proven so long as the Review Board does not expressly adopt the Inquiry Panel's finding in that regard.

In both cases, the Inquiry Panel's factual findings with regard to whether the respondent misappropriated client funds were identical. So, too, were the recommendations, regarding the charges to be brought, which it forwarded to the Board for its review. Notwithstanding that, in each case, the Board agreed with the Inquiry Panel's recommendation as to the charges to be brought, based only on the fact, that in the Waranch case, the Board did not

expressly state that it agreed with the Panel's misappropriation of funds findings, the petitioner finds a sufficient basis to frame a misappropriation charge in that case. Where, as here, the Inquiry Panel, in separate cases, has made substantially identical recommendations and findings of fact, one of which being that a charge otherwise supported by the facts has not been proved, and the Review Board adopts the recommendations without exception, Bar Counsel may not frame different charges in the two cases based on the Board's express agreement with the finding in one and silence in that regard, in the other. The cases may be charged differently only if the Board affirmatively indicates that they should be; in short, where the cases are otherwise identical, authorization to charge may not be presumed from the absence of an express preclusion appearing in the record.

## 2.

The petitioner did not respond to the respondent's challenge to the propriety of the incompetence charges. The respondent has consistently maintained that such charges were not, and, indeed, could not have been, authorized by the Board. Resolution of the issue requires application of the same analytical framework as we applied to the misappropriation charge.

The Inquiry Panel was, to be sure, concerned with the respondent's substance abuse. For that reason, it expressed the belief that "respondent's practice of law requires further supervision due to his addiction," suggesting that the Review Board might take responsibility in that regard. Nevertheless, in the Pearl case it explicitly found that the respondent "adequately represented his clients in the handling of their cases, including the preparation of settlement sheets at the conclusion of the cases." As it did on the misappropriation issue, the Board agreed. No issue in that regard having been presented, the Inquiry Panel made no explicit finding concerning the respondent's handling of the legal matters giving rise to the Waranch

complaint.[14] Consequently, the Board did not have to expressly agree with the Inquiry Panel in that regard. The Board's only conceivable reference to the respondent's competence was its repetition of the respondent's explanation for his failure to monitor his escrow account, *i.e.*, that it was due to his substance abuse, which, at that time, was at its worst.

A third complaint was also before the Inquiry Panel for hearing. That complaint, filed by Clevel Harris, alleged that the respondent "neglected the matter [for which he was retained], was unprepared at the [Workers' Compensation] hearing, and failed to turn over her file to her on a timely basis so she could proceed with the appeal." Following the hearing, the Inquiry Panel specifically found:

\* \* \* \* \* \*

b. The delay in turning over the file to complainant after the WC case did not prejudice or damage complainant.
c. Respondent did not neglect a legal matter or fail to carry out a contract of employment.

The Panel thus concluded that the respondent had not incompetently handled the matter; the respondent did not violate any applicable disciplinary rule. It recommended dismissal of the complaint.

Proof that the respondent was, or is, incompetent or that Rules 1.1 and/or 1.16(a)(2) have been violated requires the production of evidence on the basis of which it may be found that the respondent did not represent a client adequately. The Inquiry Panel's express findings to the contrary, accepted by the Board in the Pearl case, as well as the absence of express findings of incompetence in Waranch, undermine the court's findings. Indeed, that the Inquiry Panel expressed concern, in the form of a recommendation that the respondent's substance abuse be moni-

14. The complaint was made by the payee of a check, issued by respondent, which was returned for insufficient funds. The respondent's client filed no complaint regarding the respondent's performance.

tored, rather than finding the respondent incompetent, suggests and, in fact, corroborates the lack of sufficient evidence of incompetence. There simply was no evidence upon which violations of Rules 1.1 and 1.16(a)(2) could be based or from which it could be concluded that the respondent was incompetent.

### 3.

■ Neither prior to filing an answer, nor thereafter, did the respondent file a motion to dismiss any of the charges alleged in the Petition for Disciplinary Action. Instead, he answered the petition, admitting cocaine and alcohol abuse, but denying his inability, on that account, to render adequate services to his clients. When the petitioner moved to have the respondent examined physically and mentally, the respondent still did not file a motion to dismiss any of the charges. Indeed, the petitioner stated, in the motion that, except as to the choice of the doctor to conduct the examination, the respondent was in agreement. Nevertheless, prior to its order by the court, the respondent orally noted his opposition to the motion for his physical and mental examination, arguing that none of the incompetence charges had been authorized by the Review Board. Although, at that time, he said he would file a motion to dismiss the unauthorized charges, within a week, no such motion was ever filed. See BV9 e.[15]

---

**15.** That section, in pertinent part, provides:
 e. *Pleadings.*

* * *

 2. *Time for Initial Pleading.* The attorney responding to the charges shall file his initial pleading in the court designated to hear the charges within fifteen days after the date of service of the charges upon him, unless a different time is fixed by the order of the Court of Appeals.
 3. *Subsequent Pleadings.* Subsequent pleadings shall be governed by and filed in the court designated to hear the charges within the time set forth in the applicable provisions of Chapter 300 of Title 2.
Rule 2–322(b) provides:
 (b) *Permissive.* The following defenses may be made by a motion to dismiss filed before an answer is required: (1) lack of jurisdic-

The question thus raised is whether failure to file a written motion to dismiss waives the issue. We do not believe so.

■ Bar Counsel may file only such charges, supported by the facts found, as are "directed" by the Review Board. Where, on the other hand, facts found do not support a charge and/or the Review Board does not direct, either expressly or implicitly, its filing, a respondent may challenge that charge at any time; filing of a preliminary motion to dismiss is not required. *See* Maryland Rule 2–322(b). Here, before the hearing, the respondent orally moved to dismiss those charges he contended were filed without Review Board authorization. He appropriately and timely raised the issue. His acquiescence in the petitioner's motion for mental and physical examination did not waive his objection.

### D.

The respondent next excepts to Judge Murphy's admission of evidence without requiring the laying of a proper foundation. Included with the Petition for Disciplinary Action was a Request for Admissions of Fact and Genuineness of Documents, pursuant to Maryland Rules BV10 a and d and 2–424. When the respondent did not respond timely, the matters as to which admissions were sought were "deemed admitted", Rule 2–424(b) and, thus, "conclusively established." Rule 2–424(d). The petitioner sought to supplement some of those admissions. Thus, the respondent having admitted the genuineness of The Commercial Bank's statements of his escrow account covering the period August 1985 through June 1990, the petitioner offered,

tion over the subject matter, (2) failure to state a claim upon which relief can be granted, (3) failure to join a party under Rule 2–211, and (4) governmental immunity. If not so made, these defenses and objections may be made in the answer, or in any other appropriate manner after answer is filed.

*See also* Rule 2–324(b) which requires dismissal of an action whenever it appears that the court lacks jurisdiction over the subject matter.

without testimonial predicate, the details, *i.e.,* the actual cancelled checks, of those statements. The respondent objected to their admission on the ground that a proper foundation had not been laid:

> Your Honor, I again object. Mr. Murphy wants the bank statements in, fine. I have acknowledged that. But to indicate that these are cancelled checks, are the accurate records of my account without any identification or any subpoenas, I think is giving him a little bit too much leeway. You have got the bank statements and he says these are cancelled checks. Who is here to identify them?

The custodian of the record not being present, the petitioner proffered that they had been subpoenaed and:

> they are genuine records and I would proffer that the witness would testify, if called, that they are genuine records, it is the ordinary course of the business to keep such records, and they were, in fact, kept in the ordinary course of business.

It also informed the court that the custodian of the records could be brought into court within an hour to confirm its proffers. The court admitted the documents over the respondent's objection and insistence that the petitioner lay a proper foundation. The court also admitted with only the petitioner's proffer as predicate, again over the respondent's foundation objection, bank records, including monthly statements and cancelled checks, concerning the respondent's escrow account at First National Bank.[16]

The petitioner acknowledges that the respondent's objections were timely and that the court acted on the basis of its proffer.

The laying of a proper foundation is a prerequisite to the admission into evidence, as an exception to the

---

**16.** When the clerk transmitted the record as required by Maryland Rule BV11 b 1, trial exhibits were omitted. The petitioner filed a motion to correct the record, which was granted by Order dated May 19, 1992. Fifteen days later, on June 3, 1992, the respondent filed a motion in opposition to that motion. The respondent's motion is denied, the trial exhibits being necessary to the resolution of the case.

hearsay rule, of business records. *See* Maryland Code (1974, 1989 Repl.Vol.), § 10–101(b) and (c) of the Courts & Judicial Proceedings Article. *Trading Corp. v. Farrell Lines, Inc.*, 278 Md. 363, 373, 364 A.2d 1103, 1110 (1976). But the foundation need not be testimonial. *Id.* There are instances in which a court may "conclude from the circumstances and the nature of the document involved that it was made in the regular course of business." *Id. Tellez v. Canton Railroad Co.*, 212 Md. 423, 432, 129 A.2d 809, 814 (1957); *Morrow v. State*, 190 Md. 559, 562–563, 59 A.2d 325, 326 (1948); *Thomas v. Owens*, 28 Md.App. 442, 447–48, 346 A.2d 662, 665 (1975). Here, the issue is not whether the documents were kept in the regular course of business, rather it is their authentication—whether the documents are genuine. That raises a different issue. *See Snyder v. Stouffer*, 270 Md. 647, 651–52, 313 A.2d 497, 500 (1974) (a photostatic copy of the first page of a safe deposit "ledger contracts," offered without testimonial predicate inadmissible for failure to "authenticate" and provide necessary "testimonial sponsorship"). A proffer that, if required, the proponent of the evidence could prove the foundation ordinarily is not sufficient to overcome an objection on foundation grounds.

 The error, if any, was harmless, however. The bank statements and documents were admitted to prove that the respondent comingled his funds with that of his clients and misappropriated client funds. We have already concluded that the latter charge was not properly brought and, so, sustained the respondent's exception on that basis. Of course, the same ruling is mandated as to this evidence. When called as an adverse witness, however, while vehemently denying that he comingled funds, his testimony made clear that he did. That testimony was sufficient, without documentary evidence, to support the hearing court's comingling findings.

## IV.

The hearing court, as did the Inquiry Panel, concluded from the evidence adduced that the respondent co-mingled

client funds with his own. That finding is supported by the evidence adduced by the petitioner. It thus just remains for us to determine the appropriate sanction to be imposed.

The respondent was admitted to the bar on December 10, 1981. During that period, he has primarily been a sole practitioner, but, at times, has practiced in partnership with others. Aside from the findings in this case, the respondent has not been found in violation of any disciplinary rules or been the subject of disciplinary proceedings.

The petitioner's recommendation, which is not dependent upon our disposition of its exception, draws heavily upon the medical evidence and the court's findings with respect thereto, particularly the court's conclusion that the respondent is presently out of control due to his continuing abuse of cocaine and alcohol.

The petitioner recommends that the respondent be indefinitely suspended from the practice of law. It believes that he should not be permitted to seek reinstatement any sooner than two years from the date of suspension. Moreover, it asks that, even when reinstatement is ordered, it be on the conditions which it enumerates.

On the other hand, the respondent wants to continue practicing law and, in any event, does not believe suspension for as long as the petitioner recommends, is appropriate. In his view, it would simply be punishment which would not serve the purpose to be achieved by disciplining an attorney. He reminds us that he has never "botched" a case and the petitioner has not shown otherwise. He also reiterates his testimony, disagreeing with the court's findings, that he has not used alcohol or cocaine since 1989 and that he continues to control his addiction through cooperation with Mr. Vincent and attendance at AA meetings.

■ The court properly ordered that the respondent be examined as the petitioner requested. The respondent having injected the issue into the proceedings, *albeit* by way of mitigation at the Inquiry Panel, it was appropriate for the

petitioner to pursue it, not only for confirmatory purposes, but because of its relevance to determining the appropriate disposition in the case.[17] That in pursuing the issue, the petitioner framed charges, which the court found to have been committed, but that we have decided were not "directed" by the Review Board does not undermine the findings the court made, or the conclusions it drew, from the medical evidence. Moreover, the court's findings that the respondent continues to rely on alcohol and cocaine and has been unwilling fully to come to grips with that addiction are not clearly erroneous.

The record amply supports the hearing court's conclusions that the respondent's alcohol and cocaine addiction

---

17. In the circuit court, addressing the propriety of examination, the respondent conceded, that, in mitigation, he raised the issue of his drug and alcohol abuse before the Inquiry Panel. Ruling on the petitioner's motion, the court stated:

> The court: Then having injected that issue into the factual situation it seems clear that there ought to be some resolution of it.
> I mean, I think, they are entitled to an examination. I'm not saying that it would show this, but supposing examination shows this guy never took a drug in his life, this guy never smoked a marijuana cigarette, this guy is not a drug abuser, there is nothing to this. Now, if that is the situation, it seems to me that that is an issue that Bar Counsel has a right to raise in the circuit court.
> Now, if you yourself say I had some trouble with alcohol, I had some trouble with drugs, and because of these things I did something I am not particularly proud of and I promise I'll never do it again, well, for the protection of the public, which these things are supposed to be designed to do, it seems to me that the Court of Appeals would want some actual finding by the circuit court on whether there is a continuing problem that poses a risk.
> So, if there is one, we ought to know about it. If there isn't one, so much the better for you.
> * * *
> ... For the life of me I can't figure out how you can object to a physical and mental examination given the fact that you yourself introduced as element of mitigation before the Inquiry Panel the fact that you had alcohol or drug problems that you say are in the past. If they are in the past, that's wonderful, but I don't think Bar Counsel was required to accept your word that this is ancient history.

The respondent noted that his argument against the examination was being raised "simply as a procedural matter here."

substantially contributed to his acts of misconduct. Therefore, consistent with our obligation to protect the public and to define the conduct that we will not tolerate from members of the profession, *see Attorney Griev. Comm'n v. Kerpelman*, 323 Md. 136, 149, 591 A.2d 516, 523 (1991); *Attorney Grievance Commission v. Hamby*, 322 Md. 606, 611, 589 A.2d 53, 56 (1991); *Attorney Griev. Comm'n v. Kolodner*, 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989); *Attorney Griev. Comm'n v. Kahn*, 290 Md. 654, 683, 431 A.2d 1336, 1351 (1981), and taking into account the respondent's addictions, *See Attorney Griev. Comm'n v. Kramer*, 325 Md. 39, 54, 599 A.2d 100, 108 (1991); *Attorney Griev. Comm'n v. Powers*, 314 Md. 484, 491, 551 A.2d 465, 468–69 (1989); *Attorney Griev. Comm'n v. Aler*, 301 Md. 389, 398, 483 A.2d 56, 61 (1984), we believe that it is appropriate that the respondent not be permitted to practice law until he is no longer abusing alcohol, cocaine or other drugs. Accordingly, we shall indefinitely suspend the respondent from the practice of law, with the right to apply for reinstatement when he is able to demonstrate that he has the capability responsibly to practice law, drug and alcohol free.

IT IS SO ORDERED. THE RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, PURSUANT TO MARYLAND RULE BV15 c, FOR WHICH SUM, JUDGMENT IS ENTERED IN FAVOR OF THE PETITIONER.