641 A.2d 510

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Versteal D. KEMP.

Misc. (Subtitle BV) No. 53, Sept. Term, 1992.

Court of Appeals of Maryland.

May 16, 1994.

Melvin Hirshman, Bar Counsel, and Kendall R. Calhoun, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for petitioner.

Versteal D. Kemp, pro se.

Argued before RODOWSKY, McAULIFFE*, CHASANOW, KARWACKI and BELL, JJ., and MARVIN H. SMITH and CHARLES E. ORTH,** Jr., Associate Judges of the Court of Appeals (retired), Specially Assigned.

BELL, Judge.

Bar Counsel, on behalf of the Attorney Grievance Commission, acting pursuant to Maryland Rule BV9., filed a petition alleging that Versteal D. Kemp (respondent), a member of the

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Orth, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

Maryland Bar since September 11, 1974, violated Rules 1.1[1] and 1.3[2] of the Rules of Professional Conduct during his representation of Reverend Franklin Pollard and the Board of Trustees of Uplift Baptist Church in their effort to eject the Board of Trustees of Mount Victory Church from the former's premises. Specifically, the violations reverberated from the respondent's failure properly to execute and, hence, obtain an order of default pursuant to Maryland Rule 2–613, against some of the defendants. Pursuant to Maryland Rule BV9.b., we referred the matter to Judge William B. Spellbring, Jr., of the Circuit Court for Prince George's County for hearing. Judge Spellbring found that the charged violation of Rule 1.3 had not been sustained and no exceptions have been noted. He also concluded, on the basis of the cumulative errors the respondent made while attempting to obtain an order of default, that the respondent failed to provide competent representation to his clients, in violation of Rule 1.1.

## I.

Having agreed to represent Reverend Pollard and the Board of Trustees of Uplift Baptist Church in ejectment proceedings, the respondent filed, in the Circuit Court for Prince George's County, a Complaint–Action of Ejectment (T 40) and Request for Injunction on April 19, 1990. Named as defendants in the action were George Gray, Lawrence Green,[3] James Richardson, Willie Howerton, Board of Trustees of Mount Victory Church. The Complaint alleged that the Uplift Baptist Church, a non-profit religious corporation, owned the premises which were the subject of the proceedings; that the defendants ejected the plaintiffs from their "rightful" use of

---

1. RULE 1.1. COMPETENCE.
   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

2. RULE 1.3. DILIGENCE.
   A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Although in some court papers in the record, this defendant's surname is spelled "Greene," we will use the spelling used in the pleadings.

the church and its property; that the named defendant and "the Board of Trustees and members of Mount Victory Church" were wrongfully using and destroying the church premises; and that they continue to occupy the premises despite repeatedly being ordered to remove themselves. Both compensatory and punitive damages were prayed.

The respondent effected service, by private process, on the defendants Willie Howerton, James Richardson, George Gray and, although the return does not reflect on whom service was made, on the Board of Trustees of Mount Victory Church. He was unable to serve the defendant Lawrence Green.

No timely answer having been filed to the complaint, the respondent sought to obtain a default judgment against the defendants. His efforts, which spanned the period from August 1, 1990 through January 28, 1991, were unsuccessful. On August 1, 1990, the respondent filed a Motion for Default Judgement against all defendants, apparently including Lawrence Green, who had not been served. Although each defendant was named in the motion's caption, the motion did not state the last known address of any. Nor was the motion supported by a military service affidavit, as required by Section 200 of the Soldiers' and Sailors' Relief Act of 1940, 50 U.S.C.App. § 520 (1990, 1994 cum.supp.).[4]

The latter deficiency was called to the respondent's attention by Judge Salmon by memorandum dated August 8, 1990. Judge Salmon also advised the respondent that his motion was more appropriately entitled "Order of Default," pursuant to Maryland Rule 2–613(a). He did not bring to the respondent's attention the former deficiency—the failure of the motion to

---

4. Section 200 of the Soldiers' and Sailors' Relief Act of 1940, 50 U.S.C. App. § 520 (1990, 1994 cum. supp.), which is cross-referenced in Rule 2–613, imposes specific requirements that must be fulfilled before an order of default may be entered. Specifically, prerequisite to the entry of an order of default, the plaintiff must file a military service affidavit attesting that the defendant is not in military service. The purpose of the Act and thus of the affidavit it requires is to protect the rights of persons in military service who are unable to appear and defend themselves. *See, e.g., United States v. Kaufman*, 453 F.2d 306, 308–09 (2d Cir.1971); *Oliver v. Oliver*, 244 Ala. 234, 12 So.2d 852, 853 (1943).

state the last known address of each defendant against whom default was sought. *See* Maryland Rule 2–613(a).

Reverend Pollard executed military service affidavits for the Board of Trustees and for each of the individual members of the board. They were filed with the court on August 30, 1990. In each affidavit, Reverend Pollard

"... made oath in due form of law that he (she) knows the defendant herein and that to the best of his (her) information, knowledge and belief ...

(1) said defendant is not in the military service of the United States

(2) said defendant is not in the military service of any nation allied with the United States

(3) said defendant has not been ordered to report for induction under the Selective Training Act of 1940 as amended

(4) said defendant is not a member of the enlisted Reserve Corps who has been ordered to report for military service

(5) said defendant is ..."

The last paragraph of each affidavit, except that of George Gray, was left blank.[5]

The file was presented to Judge Loveless, who, on September 11, 1990, noted, as to the defendant Board of Trustees, that "there is no indication as to who constitutes the Board of Trustees and who was served in that respect." He required "a new proposed order naming the four individuals who were served." The respondent responded by filing with the court, on September 17, 1990, a revised order of default, which deleted the Board of Trustees as a defendant and named only the individual defendants.

On September 26, 1990, the court, this time per Judge Platt, identified other deficiencies: the order sought default as to all

---

5. The military affidavit, dated August 29, 1990, filed on behalf of George Gray listed his name in paragraph 5.

defendants, including Green, who had not been served, and the request for order of default did not state the last known addresses of the defendants as to whom default judgments were sought. As to the latter, Judge Platt indicated that "[a] supplement to the Petition will be sufficient."

The respondent filed a Supplement to Motion of Default Judgement on December 21, 1990. In it were stated the addresses at which the defendants George Gray, James Richardson, and Willie Howerton were served.[6] Judge Spellbring found as a fact that the Supplement to Motion of Default Judgment gave the last known addresses of the defendants who were served. In the proposed order of default, filed the same day, the only defendants' names, and so, as to whom the order was sought, were those referred to in the Supplement; the name of the defendant Lawrence Green was not included in the proposed order.

The file was next reviewed by Judge Ahalt. On January 3, 1991, in his Memorandum of Court, Judge Ahalt stated:

Motion for Order of Default cannot be granted because name of defendant does not appear in the body of the Military Affidavit no evidence of service on Lawrence Green and Supplement to Motion does not contain last known address of *all* defendants.

Although the respondent caused new military affidavits to be filed, they were, as to all defendants except George Gray, in all respects, identical to those that prompted the court's memorandum, that is, they left paragraph 5 blank. The respondent having been discharged as counsel for Pollard and the Board of Trustees of Uplift Baptist Church shortly thereafter, the record does not reflect any further activity with respect to the Order of Default. Curiously, on November 5, 1991, the respondent, though discharged, obtained an extension of time for Uplift Baptist Church to answer the Mount Victory Baptist Church's counter-claim, when the trial court

---

**6.** On November 1, 1990 the respondent requested that process be reissued for the defendant Lawrence Green. Apparently that attempt at service was, like the previous attempts, unsuccessful.

granted the Motion To Extend Time, which he filed.[7]   In February, 1992, with new counsel now representing Uplift, the case was settled.

Viewing the issue as "whether the ultimate failure to obtain the Order of Default as the result of the identified failures amounts to incompetence or are trivial or inconsequential errors," the hearing judge, as we have seen, concluded that the respondent's cumulative failures constituted the former. The "identified failures" to which the hearing judge referred were those that he found, including:

> "the initial failure to file Military Affidavits, the failure to include within the body of the Order of Default the name of the person against whom the Order would be entered, the failure to include the last known address of the Defendant against whom the Order of Default is sought, and the failure to include the name of the Defendant in the body of the Military Affidavit for that particular Defendant."

In support of his conclusion, the hearing judge reasoned:

> A cursory reading of Rule 2–613 of the Maryland Rules of Civil Procedure and the cross reference following the rule, would inform a practitioner that compliance with the Soldiers' and Sailors' Relief Act of 1940 as well as informing the Court of the last known address of the Defendant against whom an Order of Default is sought are specific requirements placed on the attorney who seeks an Order of Default for his client.   Including the name of the defendant against whom an Order of Default is sought in both the body of the Order of Default as well as the body of the Military Affidavit is necessary when more than one Defendant is named in a lawsuit and relief is sought against some, but not all, of those Defendants by Order of Default.

---

7.   The defendants filed the answer to the Complaint on October 22, 1991 and, on the next day, filed a Counter–Claim/Complaint to Quiet Title. Until the defendants' answer was filed, the name of the defendant church was stated as Mount Victory Church.   The answer made clear that the actual name of the church is Mount Victory Baptist Church.

## II.

The respondent excepted to the hearing court's Findings of Fact and Conclusions of Law. He set forth his reasons in Respondent's Memorandum of Law in Support of Exception, in which he argued both that his pleadings were sufficient and that the facts did not establish violation of Rule 1.1.

As to the former, apparently conceding the deficiency identified by Judge Salmon, the respondent argues that an Order of Default could have issued when he responded to Judge Loveless's Memorandum by dropping the Board of Trustees as a party against whom default judgment was sought. Second, he asserts, Judge Platt's observation that the "file does not reflect service as to all defendants whereas the terms of the Order grant[ ] judgment against all defendants," was adequately answered by the court file which reflected service on three of the four defendants. Therefore, the respondent urges that default could have been issued against the three that had been served, there being no basis for believing that their addresses, also in the court file, had changed since initiation of the case some five months earlier. Finally, the respondent contends that Judge Ahalt's criticisms were entirely unwarranted since the caption on the proposed order clearly indicated he was proceeding only against three of the individual defendants, for each of which the Supplement to the Motion for Order of Default provided recent addresses. Thus, the respondent concludes that his pleadings "were sufficient to identify the parties against whom he sought an Order of Default, especially in light of modern day pleading rules and principles that require courts to ignore technical defects in pleadings when inconsistent with justice and the substantive rights of parties."

Acknowledging that he may have made "a technical mistake or mistakes," the respondent maintains that he did not violate Rule 1.1. Thus, while the respondent admits to being careless, that carelessness does not, he submits, amount to incompetence of which the Rules of Professional Conduct should take cognizance. He points out that his conduct does not even

approach that at issue in *Atty. Griev. Comm. v. Brown,* 308 Md. 219, 517 A.2d 1111 (1986), the errors in that case being significantly more serious than his technical pleading mistakes. The respondent also relies upon cases from other jurisdictions which, he suggests, support a distinction being drawn between a pattern of mistakes demonstrating incompetence and technical mistakes amounting to no more than carelessness. *See, e.g., The Florida Bar v. Neale,* 384 So.2d 1264 (Fla.1980); *In Re Mason,* 203 S.W.2d 750 (Mo.App.1947). *State Ex Rel. Nebraska State Bar Association v. Pinkett,* 157 Neb. 509, 60 N.W.2d 641 (1953); *In Re Gelzer,* 31 N.J. 542, 158 A.2d 331 (1960); *In Conduct of Gygi,* 273 Or. 443, 541 P.2d 1392 (1975).

### III.

To be sustained, the findings of fact of a hearing court must be supported by clear and convincing evidence. Rule BV10.d. Thus, the respondent's exceptions can be sustained only if, upon an independent review of the record, we conclude that the hearing court's finding that the respondent failed to provide competent representation was not supported by clear and convincing evidence. *Atty. Griev. Comm. v. Rohrback,* 323 Md. 79, 93–94, 591 A.2d 488, 495 (1991); *Atty. Griev. Comm. v. Kerpelman,* 288 Md. 341, 475, 420 A.2d 940, 956 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981).

An attorney will be held to the ethical and performance standards of his or her profession. *Atty. Griev. Comm. v. Martin,* 308 Md. 272, 518 A.2d 1050 (1987). The quality of a lawyer's representation is measured by the degree of legal knowledge, skill, thoroughness, and preparation the lawyer brings to the representation. *See* Rule 1.1. Whether the representation the lawyer gives is incompetent or is merely careless or negligent depends upon what reasonably is necessary in the circumstances, *i.e.* the facts and circumstances of the particular case. Moreover, in determining whether a

lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include:

> the relative complexity of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question.

Rule 1.1, comment, at 477.

Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners, including adequate preparation in the circumstances. Rule 1.1.

In *Atty. Griev. Comm. v. Keister,* 327 Md. 56, 71, 607 A.2d 909, 916 (1992), we noted that the adequacy of the lawyer's representation of the client, not simply the result, is the appropriate focus of the inquiry. In *Keister,* the Rule 1.1 violation charged flowed from Bar Counsel's allegations concerning that respondent's " 'dependency on alcohol, cocaine, and possibly other drugs, during the time period set forth in this petition.' " *Id.* at 59, 607 A.2d at 910. Thus, in that case, the incompetence at issue referred to the lawyer "being 'unable to render adequate legal service by reason of mental or physical illness or infirmity, or addiction to or dependence upon an intoxicant or drug,' " Maryland Rule BV1.i., rather than misconduct. In this case, the respondent is charged with misconduct, specifically, that he, by "an act or omission," provided incompetent representation to a client, "which violates the disciplinary rules of the Code of Professional Responsibility as adopted by Rule 1230." Maryland Rule BV1.k.

As the parties recognize, trivial errors, which, when viewed individually, would not sustain a finding of incompetent representation, when viewed collectively or cumulatively can have that effect. *Brown,* 308 Md. at 232, 517 A.2d at 1117. In *Brown,* the hearing court found that, in handling an estate matter, a specialized area of the law, the lawyer violated D.R.

Rule 6–101(A)(1)(2)(3), Failing To Act Competently.[8]  The hearing court offered seven acts of omission or commission which formed the predicate for its determination that the lawyer violated the competency rule.  They were:

"[1] [H]is failure to segregate assets due Mr. Hahn and the trust under Mrs. Hahn's will; [2] his failure to discuss with the substitute trustee under Mrs. Hahn's will his duties as such; [3] his omissions and errors in the preparation of Mrs. Hahn's First and Final Account; [4] his detention of the trust assets over an extended period of time; [5] his failure to execute and record an appropriate deed to the legatees of Mrs. Hahn's farm; [6] his failure to see the prompt termination of Mr. Hahn's guardianship following his death; and [7] his numerous erroneous inclusions and entries on Walter Hahn's estate tax return."

308 Md. at 229, 517 A.2d at 1115–16.  *See also Atty. Griev. Comm. v. Kramer,* 325 Md. 39, 599 A.2d 100 (1991); *Atty. Griev. Comm. v. Gallagher,* 306 Md. 107, 113–14, 507 A.2d 625, 627–28 (1986); *Atty. Griev. Comm. v. McCloskey,* 306 Md. 677, 683–84, 685, 511 A.2d 56, 60–61 (1986) (conduct involving misrepresentations about knowledge of the law and failure to research law of California); *Atty. Griev. Comm. v. Sinclair,* 302 Md. 581, 589, 490 A.2d 236, 241 (1985) (failure to contact witnesses except one hostile to his client's claim, and adequately to investigate the facts giving rise to his client's injuries); *Atty. Griev. Comm. v. Sheehy,* 298 Md. 371, 378, 470 A.2d 341, 344 (1984) (inadequate preparation of client's case—

---

**8.**  Rule DR 6–101 provided:

*DR 6–101 Failing To Act Competently.*

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

Rule 1.1 is derived from subsections (A)(1) and (2).  *See* Rule 1.1, Code Comparison.  Rule DR 6–101(A)(3) is the precursor, at least in part, of Rule 1.3, relating to diligent representation by a lawyer.

naming an obviously improper party when the names of the proper defendants were readily discoverable—filing the complaint on the day before the statute of limitations was to run); *Atty. Griev. Comm. v. Morris,* 298 Md. 299, 306–07, 469 A.2d 853, 856–57 (1984) (failure to enter appearance in the Orphans' Court or to pursue a real estate purchase contract). Bar Counsel alleged and the hearing court found that, in this case, the respondent's several defaults collectively constitute incompetent representation, while, if viewed separately, one or more, but less than all, would not have that effect.

As previously noted, the several defaults the hearing judge found involved the respondent's failure to obtain an order of default. Although on four separate occasions, he sought to comply with Maryland Rule 2–613, governing default judgments, on each occasion a different judge found his submittal to be deficient. Our resolution of the question whether the deficiencies identified by the hearing judge constituted the representation the respondent afforded his clients incompetent requires, at the threshold, an analysis of what Maryland Rule 2–613(a) prescribes. It provides:

> (a) *Order of Default.*—If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an Order of Default. The request shall state the last known address of the defendant.

A cross reference of the rule provides:

> Section 200 of the Soldiers' and Sailors' Relief Act of 1940, 50 U.S.C. Appendix, § 520, imposes specific requirements that must be fulfilled before a default judgment may be entered.

A default judgment may be issued only if the defendant fails to move to vacate the order of default or his or her motion to vacate the order is denied. *See* Rule 2–613(e).

From the foregoing, it is clear that to obtain a default judgment, it is first necessary for the plaintiff to obtain an order of default. This is accomplished by filing a written

request with the court.[9] That request must set forth the last known address of the defendant against whom the default is sought. The cross reference makes clear that section 200 of the Soldiers' and Sailors' Relief Act of 1940, 50 U.S.C. App. § 520 imposes additional requirements. Counsel reviewing the rule is thus alerted to the need to review that act so as to be aware of, and meet, those requirements. Consequently, counsel who reviews section 200 of the Soldiers' and Sailors' Relief Act would have known to file a military affidavit with the Motion for Order of Default and the proposed order, because, without it, default judgment could not properly be entered.

In the case *sub judice,* it is undisputed that the respondent failed initially to file a military affidavit for each of the defendants. Nor is it disputed that the Motion for Default Judgment the respondent filed did not contain the last known addresses of the defendants against whom he sought an order of default and, ultimately, default judgment. These deficiencies existed without regard to when, or even how, knowledge of them came to the respondent's attention. They existed even though they may subsequently have been cured. Rule 2–613(a) is sufficiently clear as to have placed the respondent on notice that the last known addresses of those defendants affected by it must be included in the request for an order of default. The cross-reference served the same function insofar as the military affidavits are concerned.

Two of the identified deficiencies were cured. The first deficiency identified by the hearing court was cured when, in response to Judge Salmon's Memorandum, the respondent filed military affidavits as to each individual defendant and the Board of Trustees of Mount Victory Church. The caption of each affidavit contained the name of the defendant to which the affidavit related, and no other. Each affidavit was, more-

---

**9.** This is consistent with Maryland Rule 2–311(a), which provides:
 *(a) Generally.*—An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, and shall set forth the relief or order sought.

over, a form affidavit containing five separate paragraphs, the fifth of which was incomplete.[10]  The blank space was not filled in, and, except for the initial affidavit filed for Gray, has never been filled in by the respondent in any of the affidavits. The significance of this omission will appear hereinafter.

Prompted by Judge Platt's Memorandum, the respondent filed a Supplement to Motion of Default Judgment in which he set forth the addresses at which the defendants against whom the Order of Default was sought had been served.  The hearing court found that the supplement complied with the Rule 2–613(a) requirement that the defendants' last known address be provided in the request for order of default.  Thus, this deficiency was also cured.

The other two deficiencies identified by the hearing judge, if indeed they are deficiencies, have not been and, in fact, were never attempted to be, cured.  In point of fact, as far as the record reveals, none of the reviewing courts found that it was necessary for the name of the defendant against whom it would be entered to be included in the body of the order of default.  Judge Loveless is the only judge who could be said to have come close to articulating such a requirement.  He, however, simply noted that the reference to the Board of Trustees of Mount Victory Church did not disclose its membership.  Not only did he not require the individual board member or defendants to be named in the body of the order, but when the respondent dropped the Board as a defendant against whom default was sought, Judge Loveless's objection on that score was rendered moot.  Judge Loveless also merely

_____

10.  The fifth paragraph began, "said defendant is" and provided space for the inclusion of information pertaining to the defendant which would support the affiant's averment that the defendant is not in military service.  *See* George W. Liebmann, 3 Maryland Civil Procedure Forms, Section 222, at 115 (1984, 1994 Cum.Supp.) (stating that facts to be included are those "showing defendant is not in the military service, *e.g.,* age, residence, employment, and approximate length of time employed at present employment").

required a "new proposed order naming the four individuals who were served."[11]

The hearing court's finding that failure to include the defendant's name in the body of that defendant's military affidavit was a deficiency which prevented the respondent from obtaining an order of default was shared by Judge Ahalt. And, although the respondent filed new military affidavits, that defect was not corrected. The respondent now argues that it was not necessary to include the defendant's name in the body of the affidavit. He points out that each affidavit was captioned with only the name of the defendant for which the affidavit was filed. While he does not explain the failure to complete paragraph 5, he might have pointed out that the space it provided was for facts which would support the affiant's averments that the defendant was not in military service.

The hearing court is eminently correct in identifying as deficiencies the respondent's failure to file military affidavits and to provide, in the request for order of default, the last known addresses of the defendants against whom orders of default were sought. The correctness of the hearing court's other two findings are not nearly so clear, however. In fact, viewed in context, the opposite findings would seem to be indicated.

■ The written request for an order of default, pursuant to Maryland Rule 2–613(a), because it is "an application to the court for an order," is controlled by Maryland Rule 2–311. Moreover, an order is a "paper." Its contents, therefore, are governed by Maryland Rule 1–301, entitled "Form of Court Papers." Section (a) of that rule prescribes the contents of the caption and Title of Court papers, but no other section prescribes their contents. Thus, neither Rule 2–613(a), nor

---

11. Judge Loveless either misapprehended the true state of affairs, or he misspoke. In point of fact, only three individuals and the Board of Trustees had been served. In submitting a new proposed order listing the four individual defendants, the respondent apparently took Judge Loveless literally, although he must have known that not all four individual defendants had been served.

any other, including Rules 1–301 and 2–311, requires that the name of the defendant for whom the order is sought be named in the body of the order; there is, in short, no rule on court papers or motions comparable to Rule 8–504, "Contents of Briefs." And, as previously noted, not one of the judges who reviewed the file deemed that requirement necessary. Furthermore, the Order of Default and the Supplement to the Motion of Default Judgment, filed in response to Judge Platt's Memorandum, referenced only the three defendants whom the record showed had been served and against whom the order of default was being sought. Perusal of the pleadings and the reference in the Motion for Default Judgment to the defendants who had been served reveals, therefore, sufficient compliance with Rule 2–613(a) to justify issuance of the requested order of default.

The same is true with respect to the military affidavits. Certainly, it may have been clearer had the respondent stated the name of the defendant in the body of the military affidavit; however, that was not required in view of the fact that individual military affidavits were filed and the caption noted only the name of the defendant in respect of whom the affidavit was made. Again, the Supplement to the Motion of Default Judgment and the caption of the Order of Default filed in response to Judge Platt's Memorandum make clear that only military affidavits for those defendants against whom an order of default was sought was being supplied.

■ The hearing judge's finding of incompetence was based upon the respondent's cumulative omissions, *i.e.*, the four failures the hearing judge identified, and we have determined that only two of those legitimately could be considered. The question then is whether the respondent's failure to file a military affidavit and an adequate request for order of default is sufficient, in and of themselves, to justify a finding of incompetent representation. In answering that question, we are aware, as was the lower court, that "[t]here is a fine line between simple negligence by an attorney and violation of

[Rule 1.1] that should lead to discipline." *The Florida Bar v. Neale,* 384 So.2d 1264, 1265 (Fla.1980).

To be sure, a lawyer's failure to file a military affidavit with a motion for order of default and to comply with the content requirements of Rule 2–613(a) raises questions concerning that lawyer's legal knowledge, skill, thoroughness, and preparation, relevant considerations in the determination of that lawyer's competence. In a particular case, those omissions may implicate only some of those factors, in this case, the petitioner's thoroughness and preparation, and, thus, in effect, speak only to that lawyer's negligence and/or carelessness in handling that particular case. The facts and circumstances of the representation will determine whether it is incompetent. Where, for example, the particulars in which the representation is wanting is particularly egregious, *i.e.,* characterized by "indifference and a consistent failure to carry out the obligations [the attorney] has assumed to his client and a conscious disregard for the responsibility owed to his client," ABA Formal Opinion 335 n. 1 (1974), quoting ABA Informal Opinion 1273 (1973), whether or not the representation is deficient from the standpoint of each of the factors enumerated in Rule 1.1, and there is no other objectively reasonable explanation for the deficiency, a finding of incompetence may be sustained. On the other hand, where the deficiency implicates the lawyer's thoroughness or preparation, is not egregious, and/or an objectively reasonable explanation for the deficiency may be found, the conduct is more likely to be negligent or careless. The latter seems to be the case here.

This case does not involve an area of the law which is esoteric or complex and in which, the record shows, the respondent does not regularly practice, from which the respondent's knowledge of his incompetence to handle the matter can be inferred. Nor can the respondent's performance be characterized as grossly negligent, which could then substitute for such knowledge. *See, e.g., Atty. Griev. Comm. v. Powell,* 328 Md. 276, 614 A.2d 102 (1992); *Atty. Griev. Comm. v. Berger,* 326 Md. 129, 604 A.2d 58 (1992). Neither is it a case in which the respondent can be said to be indifferent to his

clients' interests. Moreover, while both are clear deficiencies, two of the reviewing judges did not so identify the petitioner's failure to comply with the content requirements of Rule 2–613(a). Finally, that the respondent's identified deficiencies are more likely a comment on his preparation in this particular case, rather than on his overall legal knowledge or skill, is supported by the fact, found by the hearing court, that, during the applicable time period, the respondent was under emotional stress caused by his wife's medical condition, *i.e.*, she underwent a modified radical mastectomy on her left breast in November, 1990 and, thereafter, was on a regime of chemotherapy. Under these circumstances, we are not prepared to find that a lawyer engaged in default judgment proceedings, who fails to file a military affidavit or adequately to comply with the content requirements of Rule 2–613(a) is incompetent. We believe that such failure is, at best, indicative of the lawyer's carelessness or negligence.

## IV.

While we do not condone, and certainly do not encourage, attorney negligence or carelessness in the handling of client affairs, neither do we routinely treat negligence or carelessness as a violation of the Rules of Professional Conduct. Accordingly, we sustain the respondent's exception and dismiss the remaining charge.

*PETITION DISMISSED; COSTS TO BE PAID BY THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.*